Justice Thomas
delivered the opinion of the Court.
Section 204(d) of the Equal Access to Justice Act (EAJA), codified in 28 U. S. C. § 2412(d), provides in pertinent part that “a court shall award to a prevailing party . . . fees and other expenses ... in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified.” *589 We consider whether an award of “fees and other expenses” to a “prevailing party” under § 2412(d) is payable to the litigant or to his attorney. We hold that a § 2412(d) fees award is payable to the litigant and is therefore subject to a Government offset to satisfy a pre-existing debt that the litigant owes the United States.
I
This case arises out of proceedings in which a Social Security claimant, Ruby Willow Kills Ree, prevailed on a claim for benefits against the United States. Respondent Catherine Ratliff was Kills Ree’s attorney in those proceedings. The District Court granted Kills Ree’s unopposed motion for a § 2412(d) fees award in the amount of $2,112.60. Before the United States paid the fees award, however, it discovered that Kills Ree owed the Government a debt that predated the District Court’s approval of the award. Accordingly, the United States sought an administrative offset against the fees award to satisfy part of that debt.
The Government’s authority to use administrative offsets is statutory. See 31 U. S. C. §§ 3711(a), 3716(a) (authorizing an agency whose debt collection attempts are unsuccessful to “collect the claim by administrative offset”).[1] Congress has subjected to offset all “funds payable by the United States,” § 3701(a)(1), to an individual who owes certain delinquent federal debts, see § 3701(b), unless, as relevant here, payment is exempted by statute, see § 3716(e)(2). No such *590 exemption applies to attorney’s fees awards under 28 U. S. C. § 2412(d)(1)(A) (hereinafter subsection (d)(1)(A)), which are otherwise subject to offset, see 31 CFR § 285.5(e)(1) (2009), and which, as of January 2005, are covered by the Treasury Offset Program (TOP) operated by the Treasury Department’s Financial Management Service (FMS). See Brief for Petitioner 4 (explaining TOP’S extension to cover so-called “ ‘miscellaneous’ ” payments that include attorney’s fees payments the Treasury Department makes on behalf of federal agencies).[2]
In this case, the Government, relying on the TOP, notified Kills Ree that the Government would apply her § 2412(d) fees award to offset a portion of her outstanding federal debt. Ratliff intervened to challenge the offset on the grounds that § 2412(d) fees belong to a litigant’s attorney and thus may not be used to offset or otherwise satisfy a litigant’s federal debts. The District Court held that because § 2412(d) directs that fees be awarded to the prevailing party, not to her attorney, Ratliff lacked standing to challenge the Government’s proposed offset. See No. CIV. 06-5070-RHB, 2007 WL 6894710, *1 (D SD, May 10, 2007).
The Court of Appeals for the Eighth Circuit reversed. 540 F. 3d 800 (2008). It held that under Circuit precedent, “EAJA attorneys’ fees are awarded to prevailing parties’ attorneys.” Id., at 802. The Court of Appeals recognized that its decision did not accord with a “literal interpretation of the EAJA,” ibid., and exacerbated a split among the Courts of Appeals, compare id., at 801-802, with, e. g., Reeves *591 v. Astrue, 526 F. 3d 732, 733 (CA11 2008); Manning v. Astrue, 510 F. 3d 1246, 1249-1251 (CA10 2007); FDL Technologies, Inc. v. United States, 967 F. 2d 1578, 1580 (CA Fed. 1992); Panola Land Buying Assn. v. Clark, 844 F. 2d 1506, 1510-1511 (CA11 1988).[3] We granted certiorari. 557 U. S. 965 (2009).
II
Subsection (d)(1)(A) directs that courts “shall award to a prevailing party . . . fees and other expenses . . . incurred by that party.” (Emphasis added.) We have long held that' the term “prevailing party” in fee statutes is a “term of art” that refers to the prevailing litigant. See, e. g., Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U. S. 598, 603 (2001). This treatment reflects the fact that statutes that award attorney’s fees to a prevailing party are exceptions to the “ ‘American Rule’” that each litigant “bear [his] own attorney’s fees.” Id., at 602 (citing Key Tronic Corp. v. United States, 511 U. S. 809, 819 (1994)). Nothing in EAJA supports a different reading. Cf. Arthur Andersen LLP v. Carlisle, 556 U. S. 624, 630, n. 4 (2009) (where Congress employs “identical words and phrases within the same statute,” they are presumed to carry “the same meaning” (internal quotation marks omitted)). Indeed, other subsections within § 2412(d) underscore that the term “prevailing party” in subsection (d)(1)(A) carries its usual and settled meaning — prevailing litigant. Those other subsections clearly distinguish the party who receives the fees award (the litigant) from the attorney who performed the work that generated the fees. See, e.g., § 2412(d)(1)(B) (hereinafter subsection (d)(1)(B)) (the “prevailing party” must apply for the fees award and *592 “sho[w]” that he “is a prevailing party and is eligible to receive an award” by, among other things, submitting “an itemized statement from any attorney . . . representing or appearing in behalf of the party” that details the attorney’s hourly rate and time spent on the case (emphasis added)); see also Part III, infra.
Ratliff nonetheless asserts that subsection (d)(l)(A)’s use of the verb “award” renders § 2412(d) fees payable directly to a prevailing party’s attorney and thus protects the fees from a Government offset against the prevailing party’s federal debts. See Brief for Respondent 11-19 (arguing that subsection (d)(l)(A)’s use of the word “ ‘award’ ” “expressly incorporates a critical distinction” between the right to an “‘award’” of fees and the right to “‘receiv[e]’” the fees). We disagree.
The transitive verb “ ‘award’ ” has a settled meaning in the litigation context: It means “[t]o give or assign by sentence or judicial determination.” Black’s Law Dictionary 125 (5th ed. 1979) (emphasis added); see also Webster’s Third New International Dictionary 152 (1993) (“to give by judicial decree” (emphasis added)). The plain meaning of the word “award” in subsection (d)(1)(A) is thus that the court shall “give or assign by... judicial determination” to the “prevailing party” (here, Ratliff’s client Kills Ree) attorney’s fees in the amount sought and substantiated under, inter alia, subsection (d)(1)(B).
Ratliff’s contrary argument does not withstand scrutiny. According to Ratliff, subsection (d)(1)(B), which uses “the noun ‘award’ ” to mean a “ ‘decision,’ ” requires us to construe subsection (d)(1)(A) (which uses “award” as a verb) to mean that “[o]nly the prevailing party may receive the award (the decision granting fees), but only the attorney who earned the fee (the payment asked or given for professional services) is entitled to receive it.” Brief for Respondent 16,15 (emphasis in original; some internal quotation marks and footnote omitted). This argument ignores the settled definitions *593 above, and even the definitions Ratliff proffers, because each makes clear that the verb “award” in subsection (d)(1)(A) means to “give by the decision of a law court” or to “grant . ..by judicial decree,” not simply to “give a decision” itself. Id., at 16, and n. 39 (emphasis added; internal quotation marks omitted). We thus agree with the Government that under the statutory language here, the “judicial decision is the means by which the court confers a right to payment upon the prevailing party; it is not itself the thing that the court gives (or orders the defendant to give) to the party.” Reply Brief for Petitioner 4 (emphasis in original; citing Hewitt v. Helms, 482 U. S. 755, 761 (1987) (explaining that “[i]n all civil litigation, the judicial decree is not the end but the means”)). This settled and natural construction of the operative statutory language is reflected in our cases. See, e. g., Scarborough v. Principi, 541 U. S. 401, 405 (2004) (“EAJA authorizes the payment of fees to a prevailing party” (emphasis added)).
Ratliff’s final textual argument — that subsection (d)(2)(A)’s reference to “attorney fees” itself establishes that the fees are payable to the prevailing party’s attorney, see Brief for Respondent 19-22 — proves far too much. The fact that the statute awards to the prevailing party fees in which her attorney may have a beneficial interest or a contractual right does not establish that the statute “awards” the fees directly to the attorney. For the reasons we have explained, the statute’s plain text does the opposite — it “awards” the fees to the litigant, and thus subjects them to a federal administrative offset if the litigant has outstanding federal debts.
Ill
In an effort to avoid EAJA’s plain meaning, Ratliff argues that other provisions of EAJA, combined with the SSA and the Government’s practice of paying some EAJA fees awards directly to attorneys in Social Security cases, render § 2412(d) at least ambiguous on the question presented here, *594 and that these other provisions resolve the ambiguity in her favor. Again we disagree. Even accepting § 2412(d) as ambiguous on the question presented, the provisions and practices Ratliff identifies do not alter our conclusion that EAJA fees are payable to litigants and are thus subject to offset where a litigant has outstanding federal debts.
To begin with, §2412(d)(l)’s provisions differentiate between attorneys and prevailing parties, and treat attorneys on par with other service providers, in a manner that forecloses the conclusion that attorneys have a right to direct payment of subsection (d)(1)(A) awards. As noted above, subsection (d)(1)(B) requires the prevailing party to submit a fee application showing that she is otherwise “eligible to receive an award” and, as a complement to that requirement, compels the prevailing party to submit “an itemized statement from any attorney . . . representing or appearing in behalf of the party” that details the attorney’s hourly rate and time the attorney spent on the case. (Emphasis added.) This language would make little sense if, as Ratliff contends, §2412(d)’s “prevailing party” language effectively refers to the prevailing litigant’s attorney. Subsection (d)(1)(B) similarly makes clear that the “prevailing party” (not her attorney) is the recipient of the fees award by requiring the prevailing party to demonstrate that her net worth falls within the range the statute requires for fees awards. And E AJA’s cost provision further underscores the point. That provision uses language identical to that in the attorney’s fees provision to allow prevailing parties to recover “the reasonable expenses of expert witnesses” and “any study, analysis, engineering report, test, or project” necessary to prepare “the party’s case,” § 2412(d)(2)(A), yet Ratliff does not argue that it makes costs payable directly to the vendors who provide the relevant services.
Nor do the SSA provisions on which Ratliff relies establish that subsection (d)(1)(A) fees awards are payable to prevailing parties’ attorneys. It is true that the SSA makes fees *595 awards under that statute payable directly to a prevailing claimant’s attorney. See 42 U. S. C. § 406(b)(1)(A) (providing that where a claimant “who was represented before the court by an attorney” obtains a favorable judgment, “the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of” the benefits award and may certify the full amount of the statutory fees award “for payment to such attorney out of, and not in addition to, the amount of” the claimant’s benefits award (emphasis added)). But the SSA’s express authorization of such payments undermines Ratliff’s case insofar as it shows that Congress knows how to make fees awards payable directly to attorneys where it desires to do so. Given the stark contrast between the SSA’s express authorization of direct payments to attorneys and the absence of such language in subsection (d)(1)(A), we are reluctant to interpret the latter provision to contain a direct fee requirement absent clear textual evidence supporting such an interpretation.
Ratliff contends that Congress’ 1985 amendments to § 206(b) of EA JA supply just such evidence, at least in Social Security cases. See §3(2), 99 Stat. 186, note following 28 U. S. C. § 2412, p. 1309 (Saving Provision). The 1985 amendments address the fact that Social Security claimants may be eligible to receive fees awards under both the SSA and EAJA, and clarify the procedure that attorneys and their clients must follow to prevent the windfall of an unauthorized double recovery of fees for the same work. Section 206(b) provides that no violation of law occurs “if, where the claimant’s attorney receives fees for the same work under both [42 U. S. C. § 406(b) and 28 U. S. C. § 2412(d)], the claimant’s attorney refunds to the claimant the amount of the smaller fee.” According to Ratliff, the fact that § 206(b) recognizes, or at least assumes, that an attorney will sometimes “receiv[e]” fees under 28 U. S. C. § 2412(d) suggests that we should construe subsection (d)(1)(A) to incorporate the *596 same direct payments to attorneys that the SSA expressly authorizes.
This argument gives more weight to § 206(b)’s reference to attorney “receipt]” of fees than the reference can bear. Section 206(b)’s ensuing reference to the attorney’s obligation to “refun[d]” the amount of the smaller fee to the claimant, which reference suggests that the award belongs to the claimant in the first place, alone undercuts Ratliff’s reading of “receives” as implying an initial statutory payment to the attorney.[4] And Ratliff’s reading is in any event irreconcilable with the textual differences between EAJA and the SSA we discuss above. Thus, even accepting Ratliff’s argument that subsection (d)(1)(A) is ambiguous, the statutory provisions she cites resolve any ambiguity in favor of treating subsection (d)(1)(A) awards as payable to the prevailing litigant, and thus subject to offset where the litigant has relevant federal debts.
*597 The Government’s history of paying EAJA awards directly to attorneys in certain cases does not compel a different conclusion. The Government concedes that until 2006, it “frequently paid EAJA fees in Social Security cases directly to attorneys.” Reply Brief for Petitioner 13. But this fact does not alter our interpretation of subsection (d)(l)(A)’s “prevailing party” language or the Government’s rights and obligations under the statute. As the Government explains, it most often paid EAJA fees directly to attorneys in cases in which the prevailing party had assigned its rights in the fees award to the attorney (which assignment would not be necessary if the statute rendered the fees award payable to the attorney in the first instance). The fact that some such cases involved a prevailing party with outstanding federal debts is unsurprising given that it was not until 2005 that the Treasury Department modified the TOP to require offsets against “miscellaneous” payments such as attorney’s fees awards. And as Ratliff admits, the Government has since continued the direct payment practice only in cases where “the plaintiff does not owe a debt to the government and assigns the right to receive the fees to the attorney.” Brief for Respondent 28 (boldface deleted). The Government’s decision to continue direct payments only in such cases is easily explained by the 2005 amendments to the TOP, and nothing about the Government’s past payment practices altered the statutory text that governs this casé or estopped the Government from conforming its payment practices to the Treasury Department’s revised regulations. For all of these reasons, neither EAJA nor the SSA supports Ratliff’s reading of subsection (d)(1)(A).
Our eases interpreting and applying 42 U. S. C. § 1988, which contains language virtually identical to the EAJA pro vision we address here,[5] buttress this conclusion. Our *598 most recent cases applying § 1988(b)’s “prevailing party” language recognize the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees that the statute awards to “prevailing part[ies].” See, e. g., Venegas v. Mitchell, 495 U. S. 82, 86 (1990). But these cases emphasize the nonstatutory (contractual and other assignment-based) rights that typically confer upon the attorney the entitlement to payment of the fees award the statute confers on the prevailing litigant. As noted above, these kinds of arrangements would be unnecessary if, as Ratliff contends, statutory fees language like that in § 1988(b) and EAJA provides attorneys with a statutory right to direct payment of awards. Hence our conclusion that “the party, rather than the lawyer,” id., at 87, is “entitle[d] to receive the fees” under § 1988(b), id., at 88, and that the statute “controls what the losing defendant must pay, not what the prevailing plaintiff must, pay his lawyer,” id., at 90; see also Evans v. Jeff D., 475 U. S. 717, 730-732, and n. 19 (1986) (explaining that the “language of [§ 1988]... bestow[s] on the ‘prevailing party’ (generally plaintiffs) a statutory eligibility for a discretionary award of attorney’s fees” and does not “besto[w] fee awards upon attorneys” themselves (emphasis deleted; footnote omitted)). These conclusions apply with equal force to the functionally identical statutory language here.
* * *
We reverse the Court of Appeals' judgment and remand the case for further proceedings consistent with this opinion.

It is so ordered.

 Section 3701 defines an administrative offset as “withholding funds payable by the United States” to the debtor. § 3701(a)(1). An agency may effect such an offset by cooperating with another agency to withhold such funds, or by notifying the Treasury Department of the debt so Treasury may include it in Treasury’s centralized offset program. See 31 CFR §§ 285.5(d)(2), 901.3(b)(1), (c) (2009). Alternatively, the Treasury Department may attempt an administrative offset after receiving notice from a creditor agency that a legally enforceable nontax debt has become more than 180 days delinquent. See 31 U. S. C. § 3716(c)(6); 31 CFR §§285.5(d)(1), 901.3(b)(1).

 Respondent Ratliff argues for the first time in her merits brief before this Court that the 2005 amendments to the FMS regulations exempt the EAJA fees award in this case from administrative offset against Kills Ree’s outstanding federal debt. See Brief for Respondent 8,46 (citing 31 CFR § 285.5(e)(5)). We need not decide this question because Ratliff did not raise the regulations as a bar to offset in her brief in opposition to the Government’s petition for a writ of certiorari, see this Court’s Rule 15.2, or in the proceedings below.

 The split exists in the Social Security context because the Social Security Act (SSA), 49 Stat. 620, as amended, 42 U. S. C. § 301 et seq., provides for payment of attorney’s fees awards directly to counsel, see § 406(b)(1)(A), and until 2006 the Government in many cases treated fees awards under EAJA the same way, see Reply Brief for Petitioner 13-14.

 Ratliff argues that fees awarded under 42 U. S. C. § 406(b) can never be “‘refund[ed]’” in this sense because SSA fees are “never paid initially to the client.” Brief for Respondent 14 (emphasis in original). That is not accurate. As we have explained, Social Security claimants and attorneys normally enter into contingent-fee agreements that are subject to judicial “review for reasonableness.” Gisbrecht v. Barnhart, 535 U. S. 789, 809 (2002). Where the court allows a fee, § 406(b) permits the Commissioner to collect the approved fee out of the client’s benefit award and to certify the fee for “payment to such attorney out of” that award. § 406(b)(1)(A). In such cases, the attorney would “refun[d]” the fee to the client in the event that the attorney also receives a (larger) EAJA award, because the attorney “reeeive[d]” the SSA fee from the client’s funds. Similarly inaccurate is Ratliff’s suggestion that our construction of EAJA §206(b)’s reference to “refun[d]” would preclude attorneys from collecting any fees from a prevailing party until both SSA and EAJA payments are awarded. Our construction does not alter or preclude what we have recognized as courts’ common practice of awarding EAJA fees at the time a court remands a case to the Social Security Administration (Administration) for benefits proceedings. Such awards often allow attorneys to collect EAJA fees months before any fees are awarded under 42 U. S. C. § 406(b), because § 406(b) fees cannot be determined until the Administration enters a final benefits ruling. See Shalala v. Schaefer, 509 U. S. 292, 295-302 (1993).

 Section 1988(b) provides that in actions covered by the statute and subject to exceptions not relevant here, “the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee.”