# United States Court of Appeals for the Federal Circuit

---

**MATTHEW SHEALEY, JR.,**
*Claimant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

**v.**

**MEGHAN GENTILE, HAROLD H. HOFFMAN, III,**
*Intervenors-Appellants*

---

2019-1057

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-298, Judge Coral Wong Pietsch, Judge Margaret C. Bartley, Judge Michael P. Allen.

---

Decided: January 6, 2020

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for intervenors-appellants.

JOSHUA E. KURLAND, Commercial Litigation Branch, Civil Division, United States Department of Justice,

Washington, DC, argued for respondent-appellee. Also represented by JOSEPH H. HUNT, CLAUDIA BURKE, ROBERT EDWARD KIRSCHMAN, JR.; Y. KEN LEE, ANDREW J. STEINBERG, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

_____

Before LOURIE, DYK, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

Meghan Gentile and Harold Hoffman ("intervenors") appeal a decision from the United States Court of Appeals for Veterans Claims ("Veterans Court") dismissing their claim for attorney's fees and other expenses (hereinafter "attorney's fees") under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). We conclude that the intervenors lack standing to pursue a claim for attorney's fees and affirm.

## BACKGROUND

This case involves a recurring problem—a claim for statutory attorney's fees by counsel where the client declines to authorize the request for fees.

Matthew Shealey ("client") served on active duty in Vietnam from February 1967 to March 1969. He filed a claim for entitlement to service connection for a cervical spine disability, major depressive disorder, and shortness of breath, which he contended were incurred during his active military service. On July 1, 2015, the Board of Veterans' Appeals ("Board") issued a decision finding that Mr. Shealey was dishonorably discharged from military service, and that the character of his discharge was a statutory bar to veteran's benefits. Mr. Shealey three times filed for reconsideration, all of which were denied by the Board. Before filing his third motion for reconsideration, Mr. Shealey obtained a favorable decision from the Army Board for Correction of Military Records, which upgraded his discharge

to "under honorable conditions." J.A. 31. Despite this, the Board denied reconsideration. Mr. Shealey appealed to the Veterans Court and—like many other similarly situated veterans—sought assistance from a legal aid organization.

Ms. Gentile and Mr. Hoffman are attorneys of the Veterans Legal Advocacy Group ("VetLAG"), a nonprofit law firm that offers legal representation for veterans. On February 18, 2017, Mr. Shealey engaged the intervenors to represent him in his appeal and entered into a fee agreement. Under the fee agreement, VetLAG "[would] not charge a fee to represent [Mr. Shealey] in [his] case," and "if the [Veterans] Court grant[ed] attorney's fees, VetLAG may keep the full amount of the award." J.A. 35. Mr. Shealey agreed that (1) "VetLAG may apply for attorney's fees and litigation expenses with respect to [his] case under the [EAJA]," and (2) he would "provide any assistance or information the attorneys of VetLAG may need to prepare their request for attorney's fees." *Id.*

On February 13, 2017, Ms. Gentile and Mr. Hoffman entered appearances on behalf of Mr. Shealey. Over the next three months Ms. Gentile and Mr. Hoffman reviewed the record, researched the legal issues that the case presented, and advised Mr. Shealey on his case. On May 17, 2017, they participated in a Rule 33 pre-briefing conference, where the government stated its intent to file a motion for dismissal. Based on the possibility of dismissal, Ms. Gentile and Mr. Hoffman advised Mr. Shealey to file a new claim to reopen his case. But Mr. Shealey disagreed with this advice—so much so that he discharged his counsel. Mr. Shealey was represented by new counsel for the remainder of his appeal. On August 21, 2017, the Veterans Court issued an order effectively vacating and remanding the Board's denial of Mr. Shealey's claim. The government did not dispute that Mr. Shealey was the "prevailing party" on his appeal.

On September 19, 2017, Ms. Gentile and Mr. Hoffman filed an EAJA application in Mr. Shealey's name. In their application, Ms. Gentile and Mr. Hoffman sought $4,061.60 for "work performed while representing [Mr. Shealey]."[1] J.A. 52–53. The government did not oppose the fee award. However, Mr. Shealey filed three objections to the EAJA application on October 3, November 8, and November 13, 2017, stating, among other things, that Ms. Gentile and Mr. Hoffman pressured him to drop his claim, delayed his case, and did not perform any work that contributed to Mr. Shealey prevailing in his appeal. As the Veterans Court observed, Mr. Shealey "made it very clear that he opposed the EAJA application." J.A. 79. The court allowed Ms. Gentile and Mr. Hoffman to intervene but dismissed the EAJA application based on a determination that Ms. Gentile and Mr. Hoffman lacked standing to seek fees under the EAJA. Ms. Gentile and Mr. Hoffman appeal the Veterans Court's dismissal. We have jurisdiction under 38 U.S.C. § 7292(a).

## DISCUSSION

The scope of this court's review of a decision of the Veterans Court is governed by 38 U.S.C. § 7292(d). We have jurisdiction to review "all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 7292(d)(1). Standing is a question of law that this court reviews de novo. *Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1376 (Fed. Cir. 2012).

---

[1]    The government did not dispute that the intervenors performed this work or that this work is eligible for attorney's fees under the EAJA. *See Bowling v. Principi*, 15 Vet. App. 379, 386 (2002) (holding that an attorney's withdrawal from the case "pose[d] no barrier to an EAJA award by the Court").

The issue here is whether Ms. Gentile and Mr. Hoffman have standing to file a claim for attorney's fees under the EAJA when Mr. Shealey, the "prevailing party" under the statute, has objected to such an application.

Section 2412(d) provides that "a court shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d). "Congress enacted [the] EAJA . . . in 1980 'to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings brought by or against the Federal Government.'" *Starry Assocs. v. United States*, 892 F.3d 1372, 1377 (Fed. Cir. 2018) (second alteration in original) (quoting *Scarborough v. Principi*, 541 U.S. 401, 406 (2004)).

There are three theories on which Ms. Gentile and Mr. Hoffman might have standing to sue the government for attorney's fees under the EAJA.

I

First, Ms. Gentile and Mr. Hoffman assert that they have suffered an injury in fact affording them standing because there has been "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). They assert that "by virtue of the EAJA statute, they have a legal right to reimbursement from the Secretary of the cost of their attorney fees and expenses." Intervenors' Reply Br. 3. They argue that because Mr. Shealey's substantive right to fees "is derived from the services performed . . . by [Ms. Gentile and Mr. Hoffman]," they have an "ancillary" substantive right "to apply for and collect EAJA fees." *Id.* at 16–17. They contend that they are the real parties in interest. *See* Fed. R. Civ. P. 17(a).

However, the Supreme Court expressly rejected such an argument in *Astrue v. Ratliff*, 560 U.S. 586 (2010). In *Ratliff*, the Court explained that the statutory right granted by the EAJA is limited to the "prevailing party"—in this case, Mr. Shealey—and not to the "attorney who performed the work that generated the fees." *Id.* at 591. "The fact that the statute awards to the prevailing party fees in which [its] attorney may have a beneficial interest or a contractual right does not establish that the statute 'awards' the fees directly to the attorney." *Id.* at 593.

Even before *Ratliff*, we held in *Willis v. Government Accountability Office*, 448 F.3d 1341 (Fed. Cir. 2006), that with respect to a similar fee-shifting statute, "only the prevailing party and not the attorney has the right to assert a claim for attorney's fees under the statute." *Id.* at 1346. Under the plain text of the EAJA, Ms. Gentile and Mr. Hoffman lack any substantive rights sufficient to confer standing.

## II

The second theory Ms. Gentile and Mr. Hoffman might assert is that they have a right through assignment of Mr. Shealey's EAJA claim under the fee agreement. Indeed, the Supreme Court has explained that an assignment of a claim may be sufficient to confer standing. *Sprint Communs. Co., L.P. v. APCC Servs.*, 554 U.S. 269, 271–72, 285–86 (2008) (holding that an assignee of a statutory claim under 47 U.S.C. § 226 satisfied Article III standing); *id.* at 290 (holding that once a claim is assigned, the assignee sues based on "legal rights of their own" and do not trigger prudential limitations such as third-party standing). However, because the claim for fees here is against the government, Ms. Gentile and Mr. Hoffman would have to overcome the Anti-Assignment Act, 31 U.S.C. § 3727 ("AAA"), which generally prohibits the assignment of claims against the government unless the government has

waived an objection to the assignment.[2]  *See Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980) (holding that the government waived an objection to the AAA when it "was aware of, assented to, and recognized the assignments").

This assignment theory is unavailable here, because the fee agreement on its face does not purport to assign Mr. Shealey's EAJA claim to intervenors, and the intervenors expressly disclaimed such a theory at oral argument.

## III

Third, a party "generally must assert [its] own legal rights and interests, and cannot rest [its] claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  But Ms. Gentile and Mr. Hoffman assert that in the unusual circumstances here they have third party standing to sue for fees on Mr. Shealey's behalf.  This theory is foreclosed because Ms. Gentile and Mr. Hoffman do not meet the requirements of third-party standing.  "[P]rudential standing requirements consist of 'judicially self-imposed limits on the exercise of federal jurisdiction.'"  *Willis*, 448 F.3d at 1348 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  In those unusual circumstances where third-party standing is asserted, the

---

[2]    In *Kerr v. Commissioner of Social Security*, 874 F.3d 926 (6th Cir. 2017), the Sixth Circuit held that "a fee award under [the] EAJA is 'a right to demand money from the United States,'" and could not be assigned to another party's lawyer "[u]nless the government waives application of the AAA."  *Id.* at 937 (quoting *United States v. Kim*, 806 F.3d 1161, 1171 (9th Cir. 2015)).  The Sixth Circuit observed that "[a]lthough the Court never mentioned the AAA [in *Ratliff*], it was undoubtedly aware of the prevalence of attorney fee assignments."  *Id.* at 935.

court looks at three factors in determining whether third party standing is available: "the relationship of the litigant to the person whose rights are being asserted; the ability of the person to advance his own rights; and the impact of the litigation on third-party interests." *Caplin & Drysdale v. United States*, 491 U.S. 617, 623 n.3 (1989).

In *Willis*, this court applied the *Caplin & Drysdale* factors to facts similar to those here and found that the attorney lacked standing. In *Willis*, the appellant, an attorney seeking a fee award under 5 U.S.C. § 7701(g)(1), argued that she had third-party standing to pursue her client's fee award, including fees that the client had "expressly declined to request." *Willis*, 448 F.3d at 1343.

We found that the first factor weighed in favor of third-party standing because the appellant "ha[d] an attorney-client relationship with [the client], which the Supreme Court recognized as being 'of special consequence.'" *Id.* at 1348. However, as to the second and third factors, we found that the client was "clearly free to assert the fee claim," and that "there [was] no need to recognize [the appellant's] standing in order to avoid impairment of [the client's] right to attorney's fees." *Id.* at 1348–49. We noted that "[the client's] ability to claim fees would be impaired if [her attorney] were afforded standing because [the client's] ability to resolve her fee claim by settlement with the government, and her ability to present her best case for a fee award, would be undermined if [her attorney] could independently pursue an award." *Id.* at 1349. Third-party standing requires "that [the litigant's] interests are <u>aligned</u> with those of the party whose rights are at issue." *Id.* (emphasis added) (quoting *Pony v. Cty. of L.A.*, 433 F.3d 1138, 1147 (9th Cir. 2006)).

The intervenors attempt to distinguish *Willis* on the basis that their "primary theory of standing is based on their fee agreement with Mr. Shealey." Intervenors' Reply Br. 5. They rely on the provision of the agreement

authorizing counsel to "apply for attorney's fees and litiga-
tion expenses with respect to [Mr. Shealey's] case under the
applicable provisions of the [EAJA]." J.A. 35. The problem
for the intervenors is that Mr. Shealey revoked this author-
ity through his objection to their EAJA application. That
revocation may have been a breach of the fee agreement—
an issue that we do not decide here—but Mr. Shealey's rev-
ocation of authorization deprived intervenors of the author-
ity to seek fees on his behalf. The prudential concerns
identified in *Caplin & Drysdale* remain.

Like the appellant in *Willis*, Ms. Gentile and Mr. Hoff-
man have a relationship "of special consequence" with Mr.
Shealey, but the other two factors weigh against a finding
of third-party standing. Like the client in *Willis*, Mr. Shea-
ley is clearly free to assert or not to assert his EAJA claim.
And as in *Willis*, the interests of a client such as Mr. Shea-
ley—including the ability to resolve their fee claim by set-
tlement with the government and the ability to decline
pursuing an EAJA claim at all—would be impaired if their
attorneys were afforded standing to file a claim on their
behalf when that authority has been revoked. Affording
standing to Ms. Gentile and Mr. Hoffman over Mr. Shea-
ley's objections would "would contravene the policies and
rationale on which the doctrine of third-party standing is
based." *Willis*, 448 F.3d at 1349 (quoting *Pony*, 433 F.3d at
1148). "Under these circumstances an attorney cannot sat-
isfy the requirements for prudential standing." *Id.*

IV

Finally, Ms. Gentile and Mr. Hoffman assert that
"[w]ithout a merits decision from the Veterans Court on
their entitlement to an EAJA award[, they] will have no
basis to seek a remedy against their former client" in state
court for breach of the fee agreement. Intervenors' Br. 1–
2. They argue that they "would not be able to prove dam-
ages from [Mr. Shealey's] breach because there could be no
way to establish that an EAJA payment would have been

awarded by the Veterans Court." Intervenors' Reply Br. 24. This argument ignores the authority of state courts to "render binding judicial decisions that rest on their own interpretations of federal law." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617 (1989). Nor is it at all clear that the state court would lack authority to compel Mr. Shealey to authorize a fee application. The utility of obtaining a Veterans Court decision of entitlement to a fee award cannot confer jurisdiction on the Veterans Court to adjudicate these state law breach of contract and unjust enrichment claims that intervenors potentially have against their former client. *See Wick v. Brown (In re Wick)*, 40 F.3d 367, 370–73 (Fed. Cir. 1994). Nor does the Veterans Court have authority to render an advisory opinion on this issue. *See Flast v. Cohen*, 392 U.S. 83, 96–97 (1968).

## AFFIRMED

### COSTS

No costs.