# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 20-0945(E)

George Roseberry, Appellant,

v.

Denis McDonough,
Secretary of Veterans Affairs, Appellee.

Before GREENBERG, FALVEY, and JAQUITH, *Judges.*

# O R D E R

On July 20, 2021, the Court set aside a Board of Veterans' Appeals (Board) decision in the case of U.S. Army veteran George Roseberry and remanded the case for further development and readjudication. *Roseberry v. McDonough*, No. 20-0945, 2021 WL 3046816, at \*4 (Vet. App. July 20, 2021) (mem. dec.). On November 13, 2021, Mr. Roseberry submitted an application for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The issue before the Court is whether equitable tolling of the period for filing an EAJA application is warranted. Because Mr. Roseberry has not demonstrated an extraordinary circumstance, the Court finds equitable tolling not warranted in this matter, and the Court will not accept his EAJA application as timely filed.

# I. BACKGROUND

On July 20, 2021, the Court remanded the appellant's appeal of a January 28, 2020, Board decision. *Roseberry*, 2021 WL 3046816, at \*4. The Court entered judgment on August 12, 2021. On October 15, 2021, the Court entered mandate, clarifying that "mandate is effective October 12, 2021." On November 13, 2021, appellant's counsel, Katie K. Molter, submitted the veteran's application for attorney fees, costs, and other expenses totaling $11,633.55. Appellant's Application for Attorney Fees and Expenses at 1.

The Secretary submitted a motion to dismiss Mr. Roseberry's application for an award of attorney fees as untimely because Mr. Roseberry had filed the application 1 day after the November 12, 2021, deadline. Secretary's Motion to Dismiss Appellant's Application for Attorney Fees and Expenses at 3. Attorney Molter responded and did not dispute that the application was filed more than 30 days after mandate. Appellant's Response at 1. She explained: "Unfortunately, a calendaring error occurred and mandate was recorded as October 15, 2021, the date that mandate was entered by the Court, and not October 12, 2021, when mandate was actually effective." *Id.* She stated that "it is devastating to not be compensated" for the "immense amount of work" she performed on behalf of the veteran "due to a technicality of the filing date of the attorney fee application," but she acknowledged that "counsel for Appellant cannot dispute the current legal landscape that affords the Secretary the avenue to move to dismiss on this basis." *Id.* At oral argument, new counsel for the appellant contended that the Secretary's motion to dismiss should

be denied because attorney Molter's response had demonstrated good cause and excusable neglect. Oral Argument (OA) at 25:55, 31:15, 35:40, 49:33, *Roseberry*, U.S. Vet. App. No. 20-0945(E) (argued Oct. 4, 2022), https://www.youtube.com/watch?v=i8se9xXNg-0.

## II. LEGAL LANDSCAPE

### A. Equal Access to Justice Act

To eliminate the financial barrier to challenging unreasonable government action, EAJA provides that that "a court shall award to a prevailing party . . . fees and other expenses . . . in any civil action . . . brought . . . against the United States . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). EAJA specifically empowers courts to "award reasonable fees and expenses of attorneys" to the prevailing party, 28 U.S.C. § 2412(b), to enable claimants "to obtain competent legal counsel," *Prochazka v. United States*, 116 Fed. Cl. 444, 447 (2014); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1672-73, 176 L. Ed. 2d 494, 505 (2010) (declaring that a reasonable fee is one "that is sufficient to induce a capable attorney" to represent a claimant in a meritorious case). Because the statute provides for awarding attorney fees to the prevailing party, "EAJA fees are payable to and the property of the veteran, not a veteran's attorneys." *Shealey v. O'Rourke*, 30 Vet.App. 108, 110 (2018) (per curiam order), *aff'd sub nom. Shealey v. Wilkie*, 946 F.3d 1294 (Fed. Cir. 2020); *see Astrue v. Ratliff*, 560 U.S. 586, 588–89, 130 S. Ct. 2521, 2524, 177 L. Ed. 2d 91, 97 (2010) (holding that a section 2412(d) fee award is payable to the litigant, not to his or her attorney). However, courts "recognize the practical reality that attorneys are the beneficiaries and, almost always, the ultimate recipients of the fees that the statute awards to 'prevailing part[ies].' *Ratliff*, 560 U.S. at 598 (quoting *Venegas v. Mitchell*, 495 U.S. 82, 86, 110 S. Ct. 1679, 1682, 109 L. Ed. 2d 74, 82 (1990)).

Since 1992, EAJA has specified that it applies to cases before this Court. *See Tilton v. Brown*, 5 Vet.App. 23, 24 (1993); 28 U.S.C. § 2412(d)(2)(F) (defining "court" as including "the United States Court of Appeals for Veterans Claims"). Therefore, in veterans cases,

> To establish eligibility for an EAJA award, an appellant's application must be filed within 30 days after final judgment in the action and contain (1) a showing that the appellant is a prevailing party, (2) an assertion that the appellant's net worth does not exceed $2,000,000, (3) an allegation that the Secretary's position was not substantially justified, and (4) an itemized statement of the fees and expenses sought.

*Shealey*, 30 Vet.App. at 110. Only the timeliness of the veteran's application is at issue in this case.

### B. The EAJA Deadline

Under EAJA, the statutory deadline requires an applicant for attorney fees and other expenses to submit an application within 30 days "of final judgment." 28 U.S.C. § 2412(d)(1)(B); *see* U.S. VET. APP. R. 39 (requiring an EAJA application "not later than 30 days after the Court's judgment becomes final"). By "final judgment," the statute "means a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G). The judgments of this Court are appealable to the U.S. Court of Appeals for the Federal Circuit for 60 days. *Bly v. Shulkin* (*Bly II*), 883 F.3d 1374, 1376 (Fed. Cir. 2018), *vacating Bly v. McDonald* (*Bly I*), 28 Vet.App. 256 (2016); *see* 38 U.S.C. § 7292(a); FED. R. APP. P. 4(a)(1)(B)(iii); U.S. VET. APP. R. 36(a) ("Judgment begins the 60-day time

period for appealing to . . . the Federal Circuit."). If a Notice of Appeal is not filed within 60 days, this Court's judgment becomes final, and mandate is issued. 38 U.S.C. § 7291(a); U.S. VET. APP. R. 41(a). "Mandate is when the Court's judgment becomes final and is effective as a matter of law pursuant to 38 U.S.C. § 7291." U.S. VET. APP. R. 41(a); *see Sapp v. Wilkie*, 32 Vet.App. 125, 146 (2019) (per curiam order) ("Mandate finalizes and effectuates the Court's judgment on a matter."). "Final judgment is represented by the issuance of mandate," which starts the 30-day time period an appellant has to submit an EAJA application. *Westfall v. McDonald*, 27 Vet.App. 341, 343 (2015) (per curiam order).

## C. Equitable Tolling

However, "the 30-day deadline for [EAJA] applications and its application-content specifications are not properly [termed] 'jurisdictional.'" *Scarborough v. Principi*, 541 U.S. 401, 414, 124 S. Ct. 1856, 1865, 158 L.Ed.2d 674, 687 (2004). This statutory time limit is subject to equitable tolling. *Bly I*, 28 Vet.App. at 261.

In *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S. Ct. 453, 457, 112 L. Ed. 2d 435, 443 (1990), the Supreme Court decided on a "general rule to govern the applicability of equitable tolling in law suits against the Government." *Id.* at 95, 111 S. Ct. at 457, 112 L. Ed. 2d at 443. The Supreme Court held that equitable tolling of statutory time limits for bringing suits against the Federal Government could not be more favorable than such tolling in suits between private litigants. *Id.* at 96, 111 S. Ct. at 458, 112 L. Ed. 2d at 444. And the Court described two situations when it had allowed equitable tolling: "where the claimant has actively pursued his [or her] judicial remedies by filing a defective pleading during the statutory period, [and] where the [claimant] has been induced or tricked by his [or her] adversary's misconduct into allowing the filing deadline to pass." *Id.* at 96, 111 S. Ct. at 458, 112 L. Ed. 2d at 444. Finally, the Supreme Court clarified that principles of equitable tolling "do not extend to what is at best a garden variety claim of excusable neglect." *Id.*

## D. Extraordinary Circumstances

An otherwise untimely EAJA application may be subject to equitable tolling if it is established that some "extraordinary circumstance" prevented a timely filing and that despite the circumstance, the applicant pursued his or her rights diligently. *See Bly I*, 28 Vet.App. at 261 (citing *Checo v. Shinseki*, 748 F.3d 1373, 1378-80 (Fed. Cir. 2014)). To establish equitable tolling, the appellant must demonstrate (1) an extraordinary circumstance, (2) due diligence in attempting to file, and (3) a connection between the extraordinary circumstance and the failure to timely file. *See Toomer v. McDonald*, 783 F.3d 1229, 1238 (Fed. Cir. 2015); *Checo*, 748 F.3d at 1378; *McCreary v. Nicholson*, 19 Vet.App. 324, 332 (2005), *adhered to on reconsideration*, 20 Vet.App. 86 (2006). "'Equitable tolling is not limited to a small and closed set of factual patterns,' and the Court must consider equitable tolling on a 'case-by-case basis,' 'avoiding mechanical rules,' and observing 'the need for flexibility.'" *Benson v. Wilkie*, 32 Vet.App. 381, 384 (2020) (per curiam order) (quoting *Sneed v. Shinseki* (*Sneed I*), 737 F.3d 719, 726 (Fed. Cir. 2013), *aff'd sub nom. Sneed v. McDonald* (*Sneed II*), 819 F.3d 1347 (Fed. Cir. 2016)); *see James v. Wilkie*, 917 F.3d 1368, 1373 (Fed. Cir. 2019) ("[T]he extraordinary circumstance element necessarily requires a case-by-case analysis and not a categorical determination."). But the circumstances in this case don't come close to those this Court has considered extraordinary.

3

"An extraordinary circumstance is one beyond the [appellant's] control." *Raybine v. Wilkie*, 31 Vet.App. 419, 422 (2019), *appeal docketed sub nom. Raybine v. McDonough*, No. 20-1218 (Fed. Cir. Dec. 9, 2019). That principle allows equitable tolling to stop the clock when an appellant's illness caused incapacity that prevented even the exercise of due diligence in trying to file on time. *Craig-Davidson v. McDonough*, 35 Vet.App. 281, 293 (2022) (per curiam order). "The relevant case law endorses equitable tolling in situations where a veteran sought to file in a timely manner but was prevented from doing so, such as by physical or mental infirmity, misinformation from a VA employee, homelessness, or potential third-party interference with the mail," but not in situations of hardship that do not directly result in untimely filing. *Raybine*, 31 Vet.App. at 422 (collecting cases). The Court employs a lower standard when considering certain other late nonjurisdictional filings. Under Rule 4(a)(3)(B)(i) of the Court's Rules of Practice and Procedure, an untimely Notice of Appeal will be treated as timely if it "is received within 30 days after the expiration of the filing deadline and the appellant demonstrates good cause or excusable neglect for failure to file the Notice of Appeal within the 120-day period." U.S. VET. APP. R. 4(a)(3)(B)(i). If the Notice of Appeal is received more than 30 days after the filing deadline, the extraordinary circumstance standard applies. U.S. VET. APP. R. 4(a)(3)(B)(ii).

## III. ANALYSIS

For the first time at oral argument, Mr. Roseberry argued that he is not looking for equitable tolling under the extraordinary circumstances standard, but rather under a lower standard of good cause and excusable neglect. OA at 29:23-29:50. He asserted that "the Court has not held that extraordinary circumstances are the only requirement or must be shown in order to avail oneself of equitable tolling." OA at 30:02-30:30. He argued that while the extraordinary circumstances standard provides one exception to the EAJA filing deadline, the existing legal landscape leaves room open for this Court to establish an additional exception to the deadline. OA at 38:35-39:22. Lastly, he conceded that garden variety neglect would not meet the extraordinary circumstances standard, but he argued both that garden variety neglect could meet an applicable lower standard and that his counsel's mistake was more complicated than garden variety neglect. OA at 40:09-41:37.

As an initial matter, this Court discourages and generally will not consider arguments raised by counsel at oral argument for the first time. *Ray v. Wilkie*, 31 Vet.App. 58, 69 (2019). Raising a new argument in the courtroom is unfair to opposing counsel and does a disservice to the case by limiting the forethought and preparation that makes oral argument helpful to the Court. *See Atencio v. O'Rourke*, 30 Vet.App. 74, 85–86 (2018); U.S. VET. APP. R. 34(b)(2) (providing for oral argument when it will aid the Court). Exercising our discretion to consider the belated argument by appellant's new counsel, the Court does not agree that it can apply a standard lower than extraordinary circumstances to equitably toll the EAJA filing deadline. In contrast with the appellant's contention, caselaw is clear that to benefit from equitable tolling, a party must show an extraordinary circumstance. *See Checo*, 748 F.3d at 1378 (explaining that the Veterans Court's *requirement*—that a claimant demonstrate an extraordinary circumstance, due diligence, and causation to benefit from equitable tolling—is consistent with other jurisdictions and Supreme Court guidance (first citing *McCreary*, 19 Vet.App. at 332; and then citing *Irwin*, 498 U.S. at 96)). The Federal Circuit has specifically rejected the assertion that an appellant does not need to show extraordinary circumstances as "belied by the Supreme Court's and [the Federal Circuit's] case

4

law, which make clear that both 'due diligence' and 'extraordinary circumstances' are required elements for equitable tolling." *Toomer*, 783 F.3d at 1239. Last fall, the Federal Circuit reaffirmed that an appellant must demonstrate an extraordinary circumstance to benefit from equitable tolling. *Skaar v. McDonough*, 48 F.4th 1323, 1334 (Fed. Cir. 2022) (quoting *Toomer*, 783 F.3d at 1238), *pet. for cert. filed*, No. 22-815 (U.S. Feb. 28, 2023). Because a claimant is required to show an extraordinary circumstance to benefit from equitable tolling, the appellant's suggestion that the Court apply a new, less strict standard in this case contravenes current caselaw.

In *Nelson v. Nicholson*, the Federal Circuit expressly rejected the argument that "'excusable neglect' should be incorporated into the test for equitable tolling in veterans' cases," because the standard was not mentioned in any applicable statute or rule. *Nelson v. Nicholson* (*Nelson II*), 489 F.3d 1380, 1384-85 (Fed. Cir. 2007) ("Absent a reference to 'excusable neglect' in a statute or rule, *Irwin* and its progeny control the question of whether equitable tolling applies."), *aff'g Nelson I*, 19 Vet.App. 548, 553 (2006). Here, Mr. Roseberry points to no governing statute or rule that suggests the application of such a standard. Instead, he invokes Rule 4 of the Court's Rules of Practice and Procedure, which governs equitable tolling for Notices of Appeal to the Court. U.S. VET. APP. R. 4. This rule does not apply in the context of EAJA applications.

In 2019, the Court revised Rule 4. *McGee v. Wilkie*, 31 Vet.App. 368, 370 (2019) (per curiam order). New language in Rule 4(a)(3)(B) provided that

> an untimely Notice of Appeal will be treated as timely if (i) the Notice of Appeal is received within 30 days after the expiration of the filing deadline and the appellant demonstrates good cause or excusable neglect for failure to file the Notice of Appeal within the 120-day period; or (ii) the Notice of Appeal is received more than 30 days after the expiration of the filing deadline but equitable tolling is warranted because the appellant demonstrates an extraordinary circumstance that prevented timely filing and the exercise of reasonable due diligence in attempting to file a timely Notice of Appeal.

*In re Rules of Practice and Procedure*, U.S. VET. APP. MISC. ORDER NO. 04-19, Attachment 1 at 1, Attachment 2 at 1 (Jan. 29, 2019); *accord In re Rules of Practice and Procedure*, U.S. VET. APP. MISC. ORDER NO. 09-19, Attachment 1 at 1 (June 21, 2019), www.uscourts.cavc.gov /miscellaneous_orders.php.[1]

The Court also revised Rule 26, Computation and Extension of Time, to state that "the Court may not extend the time for filing a Notice of Appeal <u>except as provided by Rule 4</u>, or an application for attorney fees and expenses." U.S. VET. APP. R. 26(b) (emphasis added). The new language in Rule 26—the underlined portion—plainly applies to Notices of Appeal but not to applications for attorney fees and expenses, highlighting that the Court did not intend to apply the new Rule 4 excusable neglect standard to applications for attorney fees and expenses. The different standards may reflect the different interests involved—one preserving the often-unrepresented veteran's opportunity to be heard in an appeal, and the other bounding the veteran's opportunity to have his or her attorney paid by public funds.

---

[1] Miscellaneous Order Number 04-19 published the proposed revisions for public comment, and Miscellaneous Order Number 09-19 published the revised rules and made them effective.

This is not to say that a showing of good cause or excusable neglect could not also satisfy the extraordinary circumstance standard. Caselaw is clear that equitable tolling does not extend to "garden variety neglect" or "ordinary attorney neglect." *Irwin*, 498 U.S. at 96; *Nelson I*, 19 Vet.App. at 553 ("[O]rdinary attorney neglect, such as missing a filing deadline, does not rise to the level of an extraordinary circumstance, and thus does not warrant equitable tolling."). But there could exist some level of attorney neglect, other than "garden variety" or "ordinary" neglect, that could constitute an extraordinary circumstance. *See, e.g., Nelson I*, 19 Vet.App. at 553 (explaining that several federal courts of appeal have held that egregious attorney misconduct can constitute an extraordinary circumstance). The Court's consideration of equitable tolling on a case-by-case basis, *see Sneed I*, 737 F.3d at 726, allows it to flexibly apply the extraordinary circumstances standard, but it provides no basis for claimants to benefit from equitable tolling based on a lower standard or principles of general equity.

"[E]quitable tolling . . . is largely premised on the notion that the veterans benefits system is paternalistic and not unduly rigid when it comes to applying rules to the typical claimant." *Ravin v. Wilkie*, 30 Vet.App. 310, 317 (2018), *aff'd*, 956 F.3d 1346 (Fed. Cir. 2020). Attorneys are expected to know the rules and follow them. *Ravin*, 30 Vet.App. at 317. As our dissenting colleague declares, instead of placing needless obstacles on the road to resolving veterans claims, we should encourage lawyers to represent veterans. *See post* at 9. But the rule of law relies on, well, rules, to rumble on—and on lawyers who are attentive to those rules. And capable lawyers do not expect to miss deadlines when they agree to represent a client—including deadlines that affect the payment of attorney fees—nor do they forgo representation in fear of missing deadlines. The lawyer here is a capable one who made a mistake, owned up to it, and expressed her understanding of the likely consequence, so new appellate counsel argued for relaxing the established equitable tolling standard.

However, under the applicable standard for equitable tolling, which requires a showing of an extraordinary circumstance, due diligence in attempting to file, and causation, Mr. Roseberry has not met his burden to show that equitable tolling of the EAJA filing deadline is warranted. *See Palomer v. McDonald*, 27 Vet.App. 245, 251 (2015) (per curiam order) (explaining that it is the appellant's burden to demonstrate entitlement to equitable tolling), *aff'd*, 646 F. App'x 936 (Fed. Cir. 2016). His attorney's miscalculation of the filing deadline based on the mandate's date of entry does not rise to the level of an extraordinary circumstance. *See McCreary*, 19 Vet.App. at 330. Instead, the mistake amounts to ordinary attorney neglect, which does not warrant equitable tolling. *See Nelson I*, 19 Vet.App. at 553; *see also Benson*, 32 Vet.App. at 384 ("[B]oth the Supreme Court and the Federal Circuit have cited 'a simple "miscalculation" that leads a [party] to miss a filing deadline' as an example of 'a garden variety claim of excusable neglect.'" (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257-58, 136 S. Ct. 750, 757, 193 L. Ed. 2d 652, 659 (2016); *Sneed II*, 819 F.3d at 1351)).

This Court's Rules point applicants for attorney fees and expenses to Rule 36 (Entry of Judgment) and Rule 41 (Mandate) to determine the time limit for submitting their application. U.S. VET. APP. R. 39(a). A practitioner's note to both Rule 36 and Rule 41 highlights the circumstance the appellant identifies as the reason her fee application was untimely. The practitioner's note provides: "Because entry of mandate on the docket is a ministerial act and may not occur on the date of mandate, practitioners are cautioned to use diligence when calculating time periods so as

6

to ensure timely filings." U.S. Vᴇᴛ. Aᴘᴘ. R. 36, Practitioner's Note, R. 41, Practitioner's Note. Attention to that note would have prevented the problem in this case. Because Mr. Roseberry has not demonstrated that an extraordinary circumstance prevented him from filing a timely EAJA application despite his exercise of due diligence, the Court finds that equitable tolling is not warranted.

## IV. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the February 9, 2022, stay in this matter is lifted. It is further

ORDERED that the Secretary's January 19, 2022, motion to dismiss the EAJA application is granted, and the November 13, 2021, EAJA application from appellant's counsel is DISMISSED as untimely.

DATED: May 17, 2023                                                PER CURIAM.

GREENBERG, *Judge*, dissenting: This is an equitable tolling case. Unique to our jurisdiction, these cases leave the factfinding, interpretation of those facts, and application of those facts to well-settled concepts of equity, to this Court. The appellant, U.S. Army veteran George Roseberry, signed a fee agreement with attorney Katie Molter wherein Ms. Molter agreed to represent the appellant before this Court at no cost to the appellant. Fee Agreement at 1. The agreement explained that Ms. Molter's only recompense for her effort would be what she could collect in attorney fees and litigation expenses through the applicable provisions of the Equal Access to Justice Act (EAJA). 28 U.S.C. § 2412(d). In July 2021, the Court remanded the appellant's service connection claim for further development and readjudication by the Board of Veterans' Appeals. *Roseberry v. McDonough*, No. 20-0945, 2021 WL 3046816, at *4 (Vet. App. July 20, 2021) (mem. dec.). As the "prevailing party" in this matter, the appellant applied for attorney fees under 28 U.S.C. § 2412(d), requesting $11,633.55 for Ms. Molter's 62.9 hours of work. Appellant's Application for Attorney Fees and Expenses at 6. However, because the application was filed 1 day late due to a calendaring error, the majority will grant the Secretary's motion to dismiss the EAJA application, and Ms. Molter will receive nothing. I respectfully dissent from the Court's holding that equitable tolling is not warranted in this case.

I.

Congress created this Court "for the express purpose of ensuring that veterans were treated fairly by the Government and to see that all veterans entitled to benefits received them." *Taylor v. McDonough*, 3 F.4th 1351, 1365 (Fed. Cir.), *reh'g en banc granted, opinion vacated,* 4 F.4th 1381 (Fed. Cir. 2021) (per curiam order). The Court may exercise equitable powers as required to carry out this statutory grant of jurisdiction. *See Barrett v. Nicholson*, 466 F.3d 1038, 1044 (Fed. Cir. 2006); *Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018). These powers include the doctrine of equitable tolling, which "is a traditional feature of American jurisprudence and a background principle against which Congress drafts limitations periods." *Boechler, P.C. v. Comm'r*, 596 U. S. ___, ___, 142 S. Ct. 1493, 1500, 212 L. Ed. 2d 524, 529 (2022). In *Bly v. McDonald*, we held that "the statutory 30-day period in which to file an EAJA application is subject to equitable tolling." 28 Vet.App. 256, 258 (2016), *vacated sub nom. Bly v. Shulkin*, 883 F.3d 1374 (Fed. Cir. 2018).

Yet this was never contemplated by Congress. The EAJA statute is silent on what classes of cases the Court can adjudicate, and we as Judges are left with the exclusive duty to interpret the law for ourselves and to consider equitable tolling on a case-by-case basis. *See Scarborough v. Principi*, 541 U.S. 401, 414, 124 S. Ct. 1856, 1865, 158 L. Ed. 2d 674, 681 (2004) ("[T]he provision's 30-day deadline for [EAJA] applications and its application-content specifications are not properly [termed] 'jurisdictional.'"); *see also Benson v. Wilkie*, 32 Vet.App. 381, 384 (2020) (per curiam order) ("'Equitable tolling is not limited to a small and closed set of factual patterns,' and the Court must consider equitable tolling on a 'case-by-case basis,' 'avoiding mechanical rules,' and observing 'the need for flexibility.'" (quoting *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013), *aff'd sub nom. Sneed v. McDonald*, 819 F.3d 1347 (Fed. Cir. 2016))); *James v. Wilkie*, 917 F.3d 1368, 1373 (Fed. Cir. 2019) ("[T]he extraordinary circumstance element necessarily requires a case-by-case analysis and not a categorical determination."). "Courts, he said, must 'stop this business of making up excuses for judges to abdicate their job of interpreting the law.'" *Buffington v. McDonough*, 143 S. Ct. 14, 15, 214 L. Ed. 2d 206, 207 (2022) (Gorsuch, J., dissenting) (quoting *Buffington v. Wilkie*, 31 Vet.App. 293, 307 (2019) (Greenberg, J., dissenting), *aff'd sub nom. Buffington v. McDonough*, 7 F.4th 1361 (Fed. Cir. 2021)). Here, the majority provides a rigid and self-limiting view of the Court's authority to grant equitable tolling when it should be treated no differently than any other interim action of a single Judge.[2]

II.

My view that equitable tolling is warranted in this case is based on "the singular characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims," which I believe should influence our definition of "extraordinary circumstance" as it relates to the timeliness of a veteran's application for EAJA fees.[3] *Henderson*, 562 U.S. at 440; *see Bly*, 28 Vet.App. at 261 (citing *Checo v. Shinseki*, 748 F.3d 1373, 1378-80 (Fed. Cir. 2014)). The majority describes an "extraordinary circumstance" in this context as one that is "beyond the [appellant's] control." *Raybine v. Wilkie*, 31 Vet.App. 419, 422 (2019), *appeal docketed sub nom. Raybine v. McDonough*, No. 20-1218 (Fed. Cir. Dec. 9, 2019). Yet the majority also finds that

---

[2] The Court's scope of review is "similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440 n.2, 131 S. Ct. 1197, 1205 n.2 (2011); *see* 38 U.S.C. § 7261. "The Court may hear cases by judges sitting alone or in panels, as determined pursuant to procedures established by the Court." 38 U.S.C. § 7254. The statutory command that a single Judge may issue a binding decision is "unambiguous, unequivocal, and unlimited," *see Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993).

[3] As Justice Alito has recognized, "[w]e have long applied 'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor.'" *Henderson*, 562 U.S. at 440 (quoting *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-21 n.9, 112 S. Ct. 570, 575 n.9, 116 L. Ed. 2d 578, 582 n. 9 (1991)); *see also, e.g., Hayburn's Case*, 2 U.S. 408, 2 Dall. 409, 1 L. Ed. 436 (1792) (describing the attempts of circuit courts to circumvent the unconstitutionality of the Invalid Pensioners Act of 1792); *Boone v. Lightner*, 319 U.S. 561, 575, 63 S. Ct. 1223, 1235, 87 L. Ed. 1587, 1600 (1943) (noting that the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 501, *amended by* Servicemembers Civil Relief Act, Pub. L. No. 108-189, 117 Stat. 2835 (2003) (current version at 50 U.S.C. §§ 3901-4043), was "always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation"); *Feres v. United States*, 340 U.S. 135, 71 S. Ct. 153, 95 L. Ed. 152 (1950) (considering, but ultimately denying, applicability of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to service-related injuries); *Johnson v. Robison*, 415 U.S. 361, 94 S. Ct. 1160, 39 L. Ed. 2d 389 (1974) (holding that judicial review of constitutional challenges to veterans benefits legislation was available even though Congress had foreclosed judicial review of individual benefits determinations).

"ordinary attorney neglect, such as missing a filing deadline, does not rise to the level of an extraordinary circumstance, and thus does not warrant equitable tolling." *Nelson v. Nicholson*, 19 Vet.App. 548, 553 (2006), *aff'd*, 489 F.3d 1380 (Fed. Cir. 2007). In the context of a veteran's application for EAJA fees, however, it is unclear how even the most garden-variety mistake by an attorney that results in the dismissal of the appellant's application would not be an "extraordinary circumstance" from the veteran's perspective.

"EAJA fees are payable to and the property of the veteran, not a veteran's attorneys. As such, attorneys do not have independent standing even to apply for EAJA fees." *Shealey v. O'Rourke*, 30 Vet.App. 108, 110 (2018) (per curiam order), *aff'd sub nom. Shealey v. Wilkie*, 946 F.3d 1294 (Fed. Cir. 2020). This is not merely a legal fiction. EAJA fees represent a way for veterans to secure quality legal representation without abandoning a portion of the very benefits they are hiring an attorney to help acquire. I would find in this case that Ms. Molter's miscalculation of the filing deadline is an extraordinary circumstance that prevented the timely filing of the appellant's EAJA application. However, we need not go that far. Though the majority frames its standard of review and conclusions in terms of a case-by-case analysis, it appears to actually apply a categorical ban, foreclosing the possibility that an attorney's miscalculation of the filing date based on the mandate's date of entry may ever constitute an extraordinary circumstance. *See James*, 917 F.3d at 1375 ("We conclude that the Veterans Court erred as a matter of law in making an impermissible categorical determination that a particular set of facts will never warrant equitable tolling of the filing deadline.").

Mechanical applications of seemingly immutable rules are inconsistent with the role of a federal Judge. They give rise to the irrebuttable presumption that our role as Judges is paramount. Anyone can add a column of numbers. Judges must decide if the outcome is right, just, equitable, and consistent with the universal intent of Congress. I would have made an independent determination that equitable tolling is warranted in this case and that it should proceed to payment on the merits.

"Lawyers should be paid for work done before this Court where the work results in a palpable benefit to the veteran." *Bly*, 28 Vet.App. at 266. We should encourage lawyers to represent veterans; we should not place needless additional obstacles on the long road toward an adequate award. *See Henderson*, 562 U.S. at 431 ("The VA's adjudicatory 'process is designed to function throughout with a high degree of informality and solicitude for the claimant.'" (quoting *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311, 105 S. Ct. 3180, 3185, 87 L. Ed. 2d 220, 226 (1985))).

### III.

I will not join the majority, as it ignores the practical considerations of being a lawyer, abstains from exercising its full authority to interpret the law, and disregards the long-standing congressional solicitude for veterans. In the words of Justice Paterson, "[j]udges may die, and courts be at an end; but justice still lives, and, though she may sleep for a while, will eventually awake, and must be satisfied." *Penhallow v. Doane's Adm'rs*, 3 U.S. (3 Dall.) 54, 79 (1795) (opinion of Paterson, J.).