Opinion for the court filed by Circuit Judge DYK. Concurring opinion filed by Circuit Judge WALLACH.
DYK, Circuit Judge.
The Board of Veterans’ Appeals (“Board”) denied Marva J. Sneed’s claim for dependency and indemnity compensation. The Court of Appeals for Veterans Claims (“Veterans Court”) dismissed Ms. Sneed’s appeal because it was untimely filed and declined to find equitable tolling based on attorney abandonment. We hold that, even assuming Ms. Sneed showed that there was attorney abandonment, she failed to demonstrate that she diligently pursued her rights. We affirm.
Background
Ms. Sneed’s husband, Reginald A. Sneed, served on active duty from June 1964 to June 1968. Mr. Sneed suffered from numerous service-connected disabilities. In January 2001, Mr. Sneed suffered a spinal cord contusion from a fall, which left him quadriplegic and confined to a chin-operated wheelchair. In October 2003, Mr. Sneed was living in a nursing home for paralyzed veterans when a fire broke out, and all of the residents, including Mr. Sneed, died of smoke inhalation.
Following the death of her husband, Ms. Sneed filed a claim for dependency and indemnity compensation under 38 U.S.C. § 1310. Mr. Sneed’s service-connected disabilities were alleged to have been principal or contributory causes of his death, see 38 C.F.R. § 3.312, based on the theories that Mr. Sneed’s service-connected spondylosis and spinal stenosis contributed to his fall and resultant quadriplegia, and that Mr. Sneed’s service-connected post-traumatic stress disorder, tinnitus, and hearing loss prevented him from leaving the nursing home during the fire.
The regional office of the Department of Veterans Affairs (“VA”) denied Ms. Sneed’s claim, and the Board affirmed. The Board’s decision was mailed to Ms. Sneed on April 5, 2011. Ms. Sneed’s notice of appeal to the Veterans Court was due on August 3, 2011, 120 days after the Board mailed its decision. 38 U.S.C. § 7266(a).
On April 13, 2011, well within the 120-day period, Ms. Sneed contacted a lawyer, Katrina J. Eagle, requesting that Ms. Eagle represent her in an appeal to the Veterans Court. According to Ms. Sneed, at the request of Ms. Eagle’s secretary, she transmitted case materials to Ms. Eagle’s office by mail and fax, and had several oral communications with Ms. Eagle’s office. The record does not describe the exact nature of the material transmitted or the substance of the communications. On August 2, 2011, Ms. Sneed received a letter from Ms. Eagle. In her letter, Ms. Eagle provided an assessment of Ms. Sneed’s service connection claim, explaining her view that the claim “does not meet the criteria under 38 C.F.R. § 3.312,” and concluded, “I do not believe the VA erred in denying your claim; thus, I will not be able to represent you for any subsequent appeal for entitlement to service connection for the cause of death, and for [depen *1350 dency and indemnity compensation] benefits.”[1] J.A. 53.
Ms. Eagle further stated, “[y]ou are free to seek another opinion from another attorney, of course. Moreover, you are not required to have an attorney to proceed before the Court. However, should you decide to appeal the Board’s adverse decision, you must file your Notice of Appeal no later than Avgust 5, 2011.” J.A. 53-54. The August 5 statement was erroneous; the correct deadline was August 3, the next day following Ms. Sneed’s receipt of Ms. Eagle’s letter. Ms. Sneed stated that, between August 2 and August 31, 2011, she contacted at least fourteen lawyers, who all turned down her case. Having failed to secure a lawyer to take her case, Ms. Sneed filed the notice of appeal herself on September 1, 2011—twenty-nine days after the deadline.
On September 7, 2011, Ms. Sneed sent a letter to the Veterans Court explaining her late filing. On June 14, 2012, the Veterans Court ordered Ms. Sneed to file a response discussing whether the circumstances in her case warranted equitable tolling of the 120-day deadline. In September 2012, the Veterans Court dismissed Ms. Sneed’s appeal as untimely filed, finding that equitable tolling did not apply because “the circumstances leading up to her late NOA are not extraordinary, but rather evidence general negligence or procrastination.” Sneed v. Shinseki (“Sneed I”), No. 11-2715, 2012 WL 4464874, at *2 (Vet.App. Sept. 27, 2012). The Veterans Court distinguished Ms. Sneed’s argument for tolling from “circumstances [that] precluded a timely filing [justifying equitable tolling,] ... such as (1) mental illness[,] ... (2) reliance on the incorrect statement of a VA official, or (3) a misfiling at the regional office or the Board.” Id. at *2 (internal quotation marks and citations omitted).
On appeal we vacated and remanded. Sneed v. Shinseki (“Sneed II”), 737 F.3d 719, 728-29 (Fed.Cir.2013). We held that “attorney abandonment may justify equitably tolling the filing deadline in appeals to the Veterans Court.” Id. We also found, as the government conceded during oral argument in the first appeal, that the Veterans Court had not made any explicit findings with respect to diligence. Id. at 724.
On remand, Ms. Sneed argued that the Veterans Court should find attorney abandonment by Ms. Eagle, warranting equitable tolling of Ms. Sneed’s deadline to file her notice of appeal. In October 2014, the Veterans Court again held that equitable tolling of the statutory deadline was not warranted. Sneed v. McDonald (“Sneed III”), No. 11-2715, 2014 WL 5365571, at *1 (Vet.App. Oct. 22, 2014), available at J.A. 1-10. The Veterans Court concluded that there was no attorney abandonment “absent an agreement [between Ms. Eagle and Ms. Sneed] to represent [Ms. Sneed] or file the NOA.” J.A. 8. The Veterans Court also held that Ms. Sneed did not act diligently in pursuing her appeal rights. Ms. Sneed appealed. We have jurisdiction under 38 U.S.C. § 7292.
Discussion
I
Section 7292 of title 38 provides that we “shall decide all relevant questions of law” arising from appeals from decisions of the Veterans Court, but, “[e]xcept to the extent that an appeal ... presents a con *1351 stitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.” 38 U.S.C. § 7292(d)(1), (d)(2). Though the “question whether equitable tolling applies in a particular case often involves, in part, the application of law to fact, ... when the material facts are not in dispute and the adoption of a particular legal standard would dictate the outcome of the equitable tolling claim, this court has treated the question of the availability of equitable tolling as a matter of law that we are authorized by statute to address.” Bailey v. Principi, 351 F.3d 1381, 1384 (Fed.Cir.2003); see also Santana-Venegas v. Principi, 314 F.3d 1293, 1298 (Fed.Cir.2002). There is no dispute here as to the relevant facts, so the issue presented is one of law, a matter within our jurisdiction.
II
In Henderson v. Shinseki, the Supreme Court held that “the deadline for filing a notice of appeal with the Veterans Court [under 38 U.S.C. § 7266(a) ] does not have jurisdictional attributes, [though] [t]he 120-day limit is nevertheless an important procedural rule.” 562 U.S. 428, 441-42, 131 S.Ct. 1197, 179 L.Ed.2d 159 (2011). Although the Supreme Court did not decide whether equitable tolling of the statutory deadline was available, see id. at 442 n. 4, 131 S.Ct. 1197, after Henderson, we have held that the 120-day deadline in § 7266(a) is subject to equitable tolling. See, e.g., Sneed II, 737 F.3d at 728; see also Checo v. Shinseki, 748 F.3d 1373, 1378 (Fed.Cir.2014).
“A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way” and prevented timely filing. Sneed II, 737 F.3d at 725 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)); see also Menominee Indian Tribe of Wis. v. United States, — U.S. -, 136 S.Ct. 750, 755, 193 L.Ed.2d 652 (2016) (explaining that the “diligence prong ... covers those affairs within the litigant’s control; the extraordinary-circumstances prong, by contrast, is meant to cover matters outside its control”). “Equitable tolling’s two components [are] ‘elements,’ not merely factors of indeterminate or commensurable weight.” Menominee Indian Tribe, 136 S.Ct. at 756 (citation omitted).
Although attorney abandonment may support equitable tolling,[2] attorney negligence is not sufficient to justify equitable tolling. To the contrary, the client is normally responsible for the malfeasance of the attorney, and in such cases has a malpractice remedy, not a tolling remedy. See Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (“[U]nder well-settled principles of agency law, the principal bears the risk of negligent conduct on the part of his agent.”) (internal quotation marks and citation omitted). Equitable tolling does not extend to “a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline.” Sneed II, 737 F.3d at 727 (quoting Holland v. Florida, 560 U.S. 631, 651-52, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)).[3] *1352 The Supreme Court has held, for example, that a litigant’s failure to file a Title VII claim within the statutory period set by 42 U.S.C. § 2000e-16(c) after receipt of an EEOC decision cannot be excused based on her lawyer’s absence from his office at the time that the agency notice was received. Irwin v. Dep’t of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Attorney abandonment, under which “a client cannot be charged with the acts or omissions of an attorney who has abandoned him,” Maples, 132 S.Ct. at 924, is a narrow exception to the usual rule.
1—4 HH l—l
The Veterans Court found that attorney abandonment had not been established because an attorney-client relationship did not exist between Ms. Sneed and Ms. Eagle. “[LJacking” from Ms. Sneed was any “declar[ation] that a written agreement for legal services existed between her and Ms. Eagle. She does not declare she entered into a written retainer agreement with her or even that an oral contract of some sort was formed. [Ms. Sneed] does not declare she was ever billed by or made payments to Ms. Eagle or that she agreed to make any payment_” J.A. 7. In short, the Veterans Court concluded that there were no extraordinary circumstances justifying equitable tolling because “[n]either [Ms. Sneed’s] statement nor her attached exhibits and evidence indicate the existence of an (explicit or implicit) attorney-client relationship between herself and Ms. Eagle after issuance of the April 2011 Board decision.” J.A. 8.
Both Ms. Sneed and Ms. Eagle reside in California, and the parties here agree that California law controls on the issue of whether an attorney-client relationship existed. As the government points out, California requires an express or implied contract to create an attorney-client relationship. See, e.g., Responsible Citizens v. Superior Court, 16 Cal.App.4th 1717, 1732, 20 Cal.Rptr.2d 756 (1993). But it is also true that California appears to give a very liberal construction of the implied contract requirement. Thus, for example, an undertaking by a lawyer to provide legal advice or the giving of actual advice as to a course of action is sufficient, even though the attorney and prospective client had never entered into a formal agreement for representation. Under California law, it is clear that neither the absence of an agreement as to services and fees, nor the preliminary nature of Ms. Sneed’s and Ms. Eagle’s communications, precluded the formation of an attorney-client relationship. See, e.g., People ex rel. Dep’t of Corps. v. SpeeDee Oil Change Sys., Inc., 20 Cal.4th 1135, 86 Cal.Rptr.2d 816, 980 P.2d 371 (1999).
In SpeeDee, the California Supreme Court declared that “[t]he fiduciary relationship existing between lawyer and client extends to preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result.... The absence of an agreement with respect to the fee ... does not prevent the relationship from arising.” Id. 86 Cal.Rptr.2d 816, 980 P.2d at 379-80 (internal quotation marks and citations omitted). Rather, the relationship is created when “the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result.” Id. 86 Cal.Rptr.2d 816, 980 P.2d at 380, 382-83; see also Perkins v. W. Coast Lumber Co., *1353 129 Cal. 427, 62 P. 57, 58 (1900) (‘When a party seeking legal advice consults an attorney at law, and secures that advice, the relation of attorney and client is established prima facie.”); 7 Cal. Jur. 3d Attorneys at Law § 170 (2015).
Similarly, in Miller v. Metzinger, the California Court of Appeal held that “an attorney-client relationship giving rise to fiduciary obligations” could arise where an attorney “undertook to obtain .., records necessary to an evaluation of [a legal claim] and to advise concerning appropriate action to be taken.” 91 Cal.App.3d 31, 40, 154 Cal.Rptr. 22 (1979); see also Perkins, 62 P. at 58 (the lawyer “advised the [client] ... not to file for record ... any claim of lien”). Thus the attorney’s statements that “his function was purely investigatory and that he did not agree to represent [the client], charge any fee for his services or secure a retainer agreement” did not preclude the existence of an attorney-client relationship. Miller, 91 Cal.App.3d at 39, 154 Cal.Rptr. 22.
Here, there was no evidence that Ms. Eagle agreed to provide an evaluation of the case, nor did she provide any evaluation until she declined to represent Ms. Sneed and explained her reasons for doing so. There is, as well, no evidence that Ms. Sneed provided confidential materials to Ms. Eagle. The California cases do not address whether accepting non-confidential materials in order to consider a case and providing an evaluation of the case while declining representation creates an attorney-client relationship. We need not decide whether, under California law, there is an attorney-client relationship in such circumstances. Nor do we decide whether, assuming that an attorney-client relationship was formed, there can be attorney abandonment satisfying the extraordinary circumstance requirement when the attorney did not undertake the representation.
Even assuming there was attorney abandonment, Ms. Sneed does not satisfy the diligence prong. See Pace, 544 U.S. at 418, 125 S.Ct. 1807 (“Even if we were to accept petitioner’s theory [that he satisfied the extraordinary circumstance test], he would not be entitled to relief because he has not established the requisite diligence.”); see also Menominee Indian Tribe, 136 S.Ct. at 756, 757 n. 5 (holding that “equitable tolling’s two components [are] ‘elements,’ ” and noting that “[b]ecause we hold that there were no extraordinary circumstances, we need not decide whether the Tribe was diligently pursuing its rights”) (citation omitted); Lawrence v. Florida, 549 U.S. 327, 336-37, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (rejecting equitable tolling without addressing diligence because petitioner fell “far short of showing ‘extraordinary circumstances’ ”).
The reasonable diligence element demands a showing of diligence during the alleged extraordinary circumstance period. See Checo, 748 F.3d at 1380 (holding that the party “must only demonstrate due diligence during the extraordinary circumstance period” of her homelessness). Under Checo’s “stop-clock approach,” if diligence is shown, the 120-day filing period would be tolled during the extraordinary circumstance period and resume running when the extraordinary circumstance ended. Id. Ms. Sneed, then, was required to show reasonable diligence between April 13, 2011, when Ms. Eagle allegedly began representing her, and August 2, 2011, when Ms. Eagle allegedly abandoned her.
While “[a] client [cannot] be faulted for failing to act on [her] own behalf when [she] lacks reason to believe [her] attorneys of record, in fact, are not repre *1354 senting [her],” Maples, 132 S.Ct. at 924, Ms. Sneed had reason to suspect that Ms. Eagle was not representing her. Where the attorney has not undertaken the representation, reasonable diligence requires that the client check with the attorney before the statutory filing time is about to run out to confirm that the attorney will undertake the representation. There is no suggestion that Ms. Sneed did this. The Veterans Court found that Ms. Sneed “asserts that she assumed that Ms. Eagle would file the NOA for her and ... does not state that she took any action during the 120-day period to confirm that ... an appeal had been filed with this Court.” J.A. 9.
Ms. Sneed’s activity during the statutory period stands in contrast to the situations in the Supreme Court’s decisions in Holland and Maples. In Holland, a prisoner’s lawyer missed the statutory deadline to file a federal habeas petition under 28 U.S.C. § 2244(d)(1)(A), despite the prisoner’s repeated requests and reminders to his attorney to file the petition. 560 U.S. at 652, 130 S.Ct. 2549.[4] The prisoner “not only wrote his [appointed] attorney numerous letters seeking critical information and providing direction; [but] also contacted state courts, their clerks, and the [state] Bar Association in an effort to have [his attorney]—the central impediment to the pursuit of his legal remedy—removed from his case. And the very day that [the prisoner] discovered that his AEDPA clock had expired due to [his attorney’s] failings, [the prisoner] prepared his own habeas petition pro se and promptly filed it with the District Court.” Id. at 653, 130 S.Ct. 2549. The Court held that the prisoner had satisfied the diligence requirement and remanded for a determination on the issue of extraordinary circumstances. Id. at 653-54, 130 S.Ct. 2549.
In Maples, the issue was whether there was “cause” to excuse a state procedural default under Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). 132 S.Ct. at 922. The Court found that attorney abandonment constituted “cause.” Id. at 924. While the case did not involve equitable tolling, the Court’s analysis is nonetheless pertinent, as recognized in Sneed II. See 737 F.3d at 728. In Maples, a prisoner on death row was represented by two out-of-state pro Bono attorneys. 132 S.Ct. at 918. With their aid, the prisoner filed a petition for postconviction relief in state court. Id. After the petition was filed, both attorneys left the firm, but neither informed their client of their departure or of their inability to continue to represent him. Id. at 919. Upon denying the prisoner’s petition, the trial court sent copies of its order to the prisoner’s counsel of record, but no copy was sent or was forwarded to the prisoner. Id. at 920. Without knowledge of the trial court’s action, and “[g]iven no reason to suspect that he lacked counsel able and willing to represent him,” the prisoner missed his 42-day deadline, under Rule 4(a)(1) of the Alabama Rules of Appellate Procedure, to file a notice of appeal *1355 from the trial court’s order denying post-conviction relief. Id. The Supreme Court concluded that attorney abandonment had been established, finding that the prisoner had no basis to believe that his petition had been denied or that he was unrepresented. Id. at 927.
The opposite situation was true for Ms. Sneed. Unlike the prisoner in Maples, she received notice of the filing deadline. Unlike the prisoner in Holland, she did nothing to ensure that the person she had asked to represent her was acting to make the necessary filing. The Veterans Court did not err in holding that Ms. Sneed did not act diligently. The absence of diligence is particularly clear here because Ms. Eagle had never before represented Ms. Sneed and had not agreed to represent her in the appeal or to file a notice of appeal. Ms. Sneed’s failure to confirm that Ms. Eagle would be acting on her behalf and that she had filed a notice of appeal precludes a finding of reasonable diligence. The fact that Ms. Sneed thought that Ms. Eagle had agreed to represent her cannot excuse her lack of diligence given the want of any objective basis for such an assumption.
Because Ms. Sneed did not demonstrate that she had been diligently pm-suing her rights, the Veterans Court did not err in holding that equitable tolling is not available.
AFFIRMED.
Costs
No costs.

. Ms. Eagle’s assessment was based on the Board’s conclusion that "the immediate cause of [Mr. Sneed’s] death was smoke inhalation” and “not ... a result of a service-connected disability, nor did a service-connected disability cause or contribute substantially or materially to his death.” J.A. 16.

. See Sneed II, 737 F.3d at 728 (citing Maples v. Thomas, 565 U.S. 266, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012); Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010)).

. Unrepresented litigants also routinely face conditions that, while challenging, are not “extraordinary.” See Menominee Indian Tribe, 136 S.Ct. at 757 (“[I]t is common for a litigant to be confronted with ... limited fi *1352 nancial resources, an uncertain outcome based on an uncertain legal landscape, and impending deadlines. These circumstances are not ‘extraordinary.’ ”) (internal quotation marks and citations omitted).

. In Holland, the Court found that
[the attorney] failed to file [the prisoner’s] federal petition on time despite [the prisoner’s] many letters that repeatedly emphasized the importance of his doing so. [The attorney] apparently did not do the research necessary to find out the proper filing date, despite [the prisoner's] letters that went so far as to identify the applicable legal rules. [The attorney] failed to inform [tile prisoner] in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite [the prisoner’s] many pleas for that information. And [the attorney] failed to communicate with his client over a period of years, despite various pleas from [the prisoner] that [his attorney] respond to his letters.
560 U.S. at 652, 130 S.Ct. 2549.