NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**HAROLD L. ROBY, JR.,**
*Claimant-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2020-1088

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 17-528, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Senior Judge Mary J. Schoelen.

---

Decided:  August 4, 2021

---

CHARLES COLLINS-CHASE, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for claimant-appellant.  Also represented by KENNETH SANTO GUERRA, JENNIFER VEIN.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent-appellee.  Also represented by

CLAUDIA BURKE, JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR.; JONATHAN KRISCH, Y. KEN LEE, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

―――――――――

Before O'MALLEY, REYNA, and HUGHES, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Harold L. Roby, Jr. appeals from a decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals ("Board") decision denying his request for an increased disability rating under 38 C.F.R. § 4.114, Diagnostic Code ("DC") 7203. *See Roby v. Wilkie*, 31 Vet. App. 91 (2019). Because we disagree with the Veterans Court's application of controlling Supreme Court precedent and its interpretation of 38 C.F.R. §§ 4.114, DC 7203 and 4.7, we vacate and remand.

## I. BACKGROUND

Harold L. Roby, Jr. actively served in the U.S. Army from January 30, 1975 to July 10, 1992. While still in service, Mr. Roby began experiencing difficulty swallowing and reflux. In August 1993, Mr. Roby was diagnosed with an esophageal disorder known as achalasia, which impaired his ability to swallow food.

Mr. Roby applied for disability benefits under 38 C.F.R. § 4.114, which provides a schedule of disability ratings for digestive disorders. Within that schedule, DC 7203 prescribes ratings for esophageal strictures. See 38 C.F.R. § 4.114, DC 7203. The code recognizes three levels of disability, expressed in terms of percentages, that "represent as far as can practicably be determined the average impairment in earning capacity resulting from" the veteran's condition. 38 C.F.R. § 4.1. DC 7203 provides the following percentage disability ratings: (1) 80% for esophageal

strictures that "[p]ermit[] passage of liquids only, with marked impairment of general health"; (2) 50% for esophageal strictures that are "[s]evere, permitting liquids only"; and (3) 30% for esophageal strictures that are "[m]oderate." 38 C.F.R. § 4.114, DC 7203. On October 1, 1993, the VA regional office ("RO") granted service connection for Mr. Roby's achalasia, assigning the lowest available rating of 30% under DC 7203 for a "[m]oderate" esophageal stricture.

Mr. Roby's achalasia worsened following his initial diagnosis, and on November 24, 2009, Mr. Roby submitted a claim for an increased benefit rating of 50% for esophageal strictures characterized as "[s]evere permitting liquids only." To support his claim, Mr. Roby underwent a VA-ordered medical examination, in which he was diagnosed as having a history of achalasia and mild reflux esophagitis. Based on this initial medical examination, the RO denied Mr. Roby's claim for increased benefits.

Mr. Roby timely filed a Notice of Disagreement and underwent a second VA-ordered medical examination. The examiner found that Mr. Roby had an esophageal stricture that caused him difficulty swallowing food but not liquids. The examiner again found that Mr. Roby's symptoms were "[m]oderate" and did not warrant a higher benefit rating of 50% under DC 7203.

The Board remanded the examiner's findings based on Mr. Roby's sworn testimony concerning his limited diet. In September 2014, the VA examiner evaluated Mr. Roby's diet (which consisted of various solids, semisolids, and liquids) and noted that he would have "to chew solids for a long time but they do pass" after approximately 10–15 minutes. J.A. 667. The examiner again found that Mr. Roby's symptoms only qualified as "[m]oderate" under DC 7203, and the RO denied Mr. Roby's request for a higher benefit rating.

Mr. Roby timely appealed the RO's decision to the Board. The Board denied Mr. Roby's claim for an increased benefit rating. The Board reasoned that, while Mr. Roby must chew small pieces of food to a liquid consistency before swallowing, under 38 C.F.R. § 4.7[1], Mr. Roby's achalasia symptoms more closely approximated the "[m]oderate" criteria for a 30% rating rather than the "[s]evere, permitting liquids only" criteria for a 50% rating.

Mr. Roby timely appealed the Board's decision to the Veterans Court. The Veterans Court first considered whether the terms "permitting" and "[p]ermitting passage" from DC 7203's benefits ratings of 50% and 80%, respectively, referred to substances entering the mouth or, alternatively, to substances passing through the esophagus. The Veterans Court agreed with Mr. Roby that these terms referred to passage through the esophagus because DC 7203 assessed esophageal strictures. *Roby*, 31 Vet. App. at 97.

The Veterans Court also weighed Mr. Roby's and the VA's proffered definitions of the term "liquids" in DC 7203. *Id.* The Veterans Court found that neither party's definition helped illuminate the ordinary meaning of "liquids." *Id.* at 97–98. The Veterans Court instead held that the term was ambiguous because the diagnostic code provided no definition and the structure, purpose, and regulatory history of DC 7203 were silent on the topic. *Id.* at 98.

Upon finding the term "liquids" ambiguous, the Veterans Court relied on the Supreme Court's *Auer* framework

---

[1]    This regulatory section states, "[w]here there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned." 38 C.F.R. § 4.7.

to defer to the VA's proffered interpretation of DC 7203. *Id.* at 99 (citing, *inter alia*, *Auer v. Robbins*, 519 U.S. 452, 462 (1997) for the proposition that *Auer* deference is appropriate as long as the agency's proposed definition is "not plainly erroneous or inconsistent with the regulation, and where there is no reason to suspect that it does not reflect fair and considered judgment on this matter"). According to the VA, DC 7203's term "liquids" does not "include foods that have a textu[r]al quality like purees, soft solids, semisolids, or *chewed solids*." *Id.* at 101 (emphasis in original). The Veterans Court found that the VA's interpretation warranted *Auer* deference because it "is consistent with the regulatory scheme [], which provides higher evaluations based on greater difficulty swallowing." *Id.* at 99 (citations omitted).

The Veterans Court also reasoned that *Auer* deference was appropriate because the VA's interpretation reflects the Secretary's "fair and considered judgment." *Id.* The Veterans Court based this conclusion on the fact that, in a previously proposed amendment to DC 7203 (which was later withdrawn), the VA had defined the term "liquids" similarly to how it was interpreting the term in this case. *Id.* The Veterans Court also pointed out that, in a different diagnostic code concerning temporomandibular disorders (38 C.F.R. § 4.150, DC 9905), the VA had defined "full liquids" consistently with how it defined "liquids" under DC 7203. *Id.* at 99–100 (citing, *inter alia*, *Atlantic Cleaners & Dyers v. United States*, 286 U.S. 427, 433 (1932) for the proposition that "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning").

After applying *Auer*'s framework to the facts of this case, the Veterans Court "stress[ed] that *Auer* deference is not necessary to [its] conclusion." *Id.* at 100. According to the Veterans Court, the less deferential standard espoused in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) also applies in this case because the VA's "interpretation was

based on thorough consideration and valid reasoning and is consistent with other interpretations of 'liquid.'" *Id.*

The Veterans Court also rejected Mr. Roby's argument that, in light of DC 7203's ambiguous use of the term "liquids" and vague descriptions of the ratings criteria, the court should have resolved any ambiguities in Mr. Roby's favor pursuant to the pro-veteran canon described in *Brown v. Gardner*, 513 U.S. 1301 (1994). *Id.* at 100–101. The Veterans Court concluded that, because the VA's proposed interpretation qualifies for *Auer* deference, the pro-veteran canon does not need to be considered. *Id.* at 100. While it did not say so expressly, the Veterans Court presumably also would afford the VA agency *Skidmore* deference without regard to the *Brown v. Gardner* presumption.

The Veterans Court lastly addressed Mr. Roby's argument that the Board erred under 38 U.S.C. § 4.7 by failing to consider whether his achalasia "more closely approximate[d]" the criteria for a 50% benefit rating under DC 7203. The Veterans Court concluded that the Board properly relied on testimony and additional record evidence to determine that Mr. Roby's achalasia did not approximate the criteria for a 50% benefit rating under § 4.7 in light of the definition of "liquids" the Board employed. *Id.* at 103.

Mr. Roby timely appealed the Veterans Court decision. We have jurisdiction under 38 U.S.C. § 7292.

## II. DISCUSSION

Section 7292 grants our court "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" by the Veterans Court. 38 U.S.C. § 7292(c). "In so doing, we review independently and without deference the [Veterans Court's] interpretations of statutory provisions and regulations." *Hensley v. West*, 212 F.3d 1255, 1259 (Fed. Cir. 2000). Our court cannot review a challenge to the Veterans

Court's factual determinations or to a law or regulation as applied to the facts of a particular case. *See Sneed v. McDonald*, 819 F.3d 1347, 1350–1351 (Fed. Cir. 2016) (quoting 38 U.S.C. § 7292(d)(1)–(2)). We must, however, set aside an interpretation of a regulation "that was relied upon in the decision of the [Veterans Court]" and that we find to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7292(d)(1)(A).

Mr. Roby argues on appeal that the term "liquid" is not ambiguous when considered in context. Mr. Roby further contends that, even if the term "liquid" were ambiguous, the Veterans Court erred in deferring to the VA's interpretation because it does not reflect the VA's fair and considered judgment. And Mr. Roby asserts that the Veterans Court erred by failing to adequately explain how Mr. Roby's condition more closely approximated the "[m]oderate" rather than "[s]evere, permitting liquids only" rating of DC 7203, particularly given the ill-defined nature of the criteria. Finally, Mr. Roby concludes that the Veterans Court should have assessed the Board's findings under DC 7203 and § 4.7 in light of *Gardner*'s pro-veteran canon and resolved any close questions in his favor. We address each argument in turn.

A.

Mr. Roby first contends that DC 7203 unambiguously employs the term "liquids." According to Mr. Roby, since DC 7203 does not explicitly define "liquids," it should be given its ordinary meaning—"a substance that is not a solid or gas, flows readily, and has no independent shape." Appellant's Br. at 18. Under this ordinary meaning, Mr. Roby argues that "liquids" encompass foods having a liquid consistency as they pass through the esophagus (which he asserts includes foods like applesauce, baby food, yogurt, and mashed potatoes). *Roby*, 31 Vet. App. at 94. We agree, at least in part.

While the term "liquid" can mean different things to different people when considered in a vacuum, here it must be read in the context of the diagnostic code at issue and of the statutory scheme of which it is a part. Before finding an ambiguity, a court must consider not just the text, but the structure and history of that text, as well as its context. *See McCarthy v. Bronson*, 500 U.S. 136, 139 (1991) ("[S]tatutory language must always be read in its proper context. 'In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'") (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)); *see also Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 321 (2014) ("[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'") (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

As the Veterans Court found, because DC 7203 assesses esophageal strictures and speaks in terms of "permitting passage" through the esophagus, the term must refer to the nature of substances *at the time* they pass through the esophagus. *Roby*, 31 Vet. App. at 97. We find the Veterans Court's conclusion on that point compelling.

Despite this conclusion, the Veterans Court seemed to ignore it when finding an ambiguity in DC 7203. It predicated its finding of an ambiguity on three things: (1) the absence of an actual definition in the regulation itself; (2) the absence of any regulatory history discussing the term; and (3) the fact that the parties' proffered definitions differed so pointedly. On this last point, the court noted that Mr. Roby appeared to contend that anything that is not a solid is a liquid and the government contended that anything that is not a liquid in its original state cannot be a liquid within the meaning of the regulation.

We agree that the term "liquids" is not defined in the code or in its regulatory history. Indeed, the VA considered but walked away from any regulatory process that might have lent better clarity to either the code or its impact on the Board's analysis under § 4.7. But, the mere fact that there is no express definition and that the parties disagree about what a term means, even vehemently so, does not render a term genuinely ambiguous for purposes of a resort to *Auer* step two. While it is true that there is no express definition of the term "liquids" in the regulation or regulatory history, both make clear that the term is not to be assessed based on what form a substance takes before it enters the mouth. As the Veterans Court recognized, what occurs in the mouth can greatly alter the state of whatever enters the mouth. *Id.* The Secretary's contention that whether a food item is a liquid must be based on its "natural state" or its state when it enters the mouth is irrelevant to the question of whether the term as used in DC 7203 is ambiguous.

The Secretary's reliance on dictionary definitions does not fare much better because the court did not differentiate between those definitions that speak of liquids without reference to any oral action upon the food at issue and those that have been processed in the mouth. The question the court should have asked—as its predicate finding required—is what constitutes a liquid at the time an esophagus permits passage of that item to the stomach. And it should have only considered definitions and arguments that speak to that context and that point in time.[2]

This concern is heightened by the fact that the Veterans Court failed to keep in mind the remedial nature of the broader regulatory scheme of which DC 7203 is a part. The

---

[2]    While Mr. Roby points out a number of other weaknesses in the Secretary's dictionary citations, we think it best that those points be considered on remand.

Supreme Court has previously noted that Congress's solicitude towards veterans is "plainly reflected in the [Veterans Judicial Review Act ("VJRA")], as well as subsequent laws that place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 440 (2011). In legislating the VJRA, Congress stated that it "has designed and fully intends to maintain a beneficial non-adversarial system of veterans benefits." H.R. Rep. No. 100–963, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5782, 5794–95. Indeed, the VJRA is replete with provisions designed to make it easier for veterans to obtain benefits and to challenge denial of such benefits. The development of this veteran-friendly benefits scheme and its remedial nature was the very raison d'être for passage of the VJRA. In addition to the VJRA, another "subsequent law[]"Congress passed to favor veterans comprises the Veterans Appeals Improvement and Modernization Act of 2017 ("AMA"). Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115–55, 131 Stat. 1105 (codified in scattered sections of 38 U.S.C.). Congress structured the AMA to avoid the various sources of delay associated with processing veterans' benefits claims. *See Monk v. Wilkie*, 978 F.3d 1273, 1275 (describing the AMA's enactment). Again, Congress evinced a desire to make it easier for veterans to access benefits they deserve.

For these reasons, we find that the Veterans Court failed to adequately consider the parties' arguments in context and jumped too quickly to its conclusion that DC 7203 is ambiguous. We, thus, vacate and remand this matter for reconsideration of whether there is any true ambiguity in DC 7203. But that is not the only reason we find we must vacate the judgment in this case and remand for further inquiry.

B.

We next address the Veterans Court's decision to afford the agency deference in this case. For the reasons discussed below, we agree with Mr. Roby that substantial evidence does not support the Veterans Court's decision to extend *Auer* deference to the VA.

To receive deference, "an agency's reading of a rule must reflect 'fair and considered judgment. . . .' That means . . . that a court should decline to defer to a merely 'convenient litigating position' or '*post hoc* rationalizatio[n] advanced' to 'defend past agency action against attack.'" *Kisor II*, 139 S. Ct. at 2417 (citing *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (alterations in original). The Veterans Court found that "there is no regulatory history available . . . to glean how the term liquid should be interpreted." *Roby*, 31 Vet. App. at 98 (comparing 38 C.F.R. § 4.114, DC 7203 (1964) with 38 C.F.R. § 4.114, DC 7203 (2018)). The Veterans Court instead relied on a proposed (but later withdrawn) amendment to DC 7203, as well as the VA's interpretation of "full liquid" in 38 C.F.R. § 4.150, DC 9905, to defer to the VA's proffered definition. *Id.* at 99–100. We find that neither regulation supports the Veterans Court's decision to defer to the agency's chosen interpretation.

1.

The VA's withdrawn amendments to DC 7203 do not support the Veterans Court's conclusion that the VA employed "fair and considered judgment" when construing the term "liquids" or considering the effect of that term on its ratings determination The VA published a proposed rule to update DC 7203, reasoning that this regulation's current "criteria contain subjective terms such as 'marked,' 'moderate,' and 'severe,' which could be interpreted differently by different individuals." 76 Fed. Reg. 39160, 39162 (Jul. 5, 2011). To remedy this subjectivity, the VA proposed four different evaluation ratings: 100-percent, 60-percent, 30-

percent, and 10-percent. *Id.* Only individuals who required "[t]ube feeding" and were on a "diet restricted to liquid foods" qualified for the 100-percent evaluation rating; the other three ratings applied to people whose diets were "restricted to liquid and soft solid foods" with gradations of limitations within these categories. *Id.* The VA later withdrew this proposed rule, stating that it was based "upon outdated and partially incomplete or irrelevant information." 77 Fed. Reg. 27009 (May 8, 2012).

According to the government, the proposed changes demonstrate that the VA knew how to incorporate terms such as "soft solid foods" into its rating criteria. *See* Appellee's Br. at 21. The government argues that the fact that the VA chose not to include such terms in DC 7203's 50-percent evaluation rating supports the VA's interpretation of "liquids" as excluding "foods that have a textu[r]al quality." *Id.*

A close reading of the withdrawn amendments to the evaluation ratings robs the government's position of any persuasive value. The VA's proffered interpretation of DC 7203's 50-percent evaluation rating excludes "foods that have a textu[r]al quality" (such as "soft solid foods") from the definition of "liquids." But the VA's withdrawn amendments to DC 7203 only distinguished "liquid" and "soft solid foods" at the highest evaluation rating of 100-percent, a rating which would have required tube feeding; every other rating employed these terms together. The proposed amendments therefore only support the notion that the VA wished to differentiate "foods that have a textu[r]al quality" (such as "soft solid foods") from "liquids" at the highest evaluation rating of DC 7203. Since Mr. Roby never sought to increase his benefits to the highest evaluation rating, it does not follow that the VA's withdrawn proposed amendments reflect the VA's "fair and considered judgment" concerning the definition of "liquids," at the moderate level of impairment.

Even if there were no discrepancies between the current and withdrawn evaluation ratings, we would still reach the same result. The VA withdrew its proposed changes to DC 7203 because they were based "upon outdated and partially incomplete or irrelevant information." 77 Fed. Reg. 27009 (May 8, 2012). Such a withdrawn amendment cannot satisfy *Auer*'s requirement of "fair and considered judgment" because it does not reflect the agency's "authoritative or official position." *Kisor II*, 139 S. Ct. at 2416 (internal quotation marks omitted). We therefore find that the VA's withdrawn version of DC 7203 does not constitute substantial evidence for the Veterans Court's decision to grant *Auer* deference.

2.

The VA's use of the term "full liquid" in 38 C.F.R. § 4.150, DC 9905 similarly does not support the Veterans Court's decision to grant *Auer* deference. Unlike DC 7203, which is part of a schedule of ratings concerning the digestive system, DC 9905 is part of a ratings schedule relating to dental and oral conditions. *Compare* 38 C.F.R. § 4.114 *with* 38 C.F.R. § 4.150. DC 7203, moreover, employs the term "liquids," whereas DC 9905 provides the more specific description of "full liquid." 38 C.F.R. § 4.114, DC 7203; 38 C.F.R. § 4.150, DC 9905.

Despite these differences, the government contends that the unifying principle lies in Note (3) of DC 9905, which divides "mechanically altered foods" into four categories: (1) "full liquid"; (2) "puree"; (3) "soft"; and (4) "semisolid foods." Appellee's Br. at 18 (citing 38 C.F.R. § 4.150, DC 9905, Note (3)). According to the government, because Note (3) of DC 9905 states that it is for "VA compensation purposes," this indicates that its distinction between "full liquid" and "soft"/"semisolid foods" applies not just to DC 9905 but to "the entire rating schedule" (including DC 7203). *Id.* at 19. Given the VA's distinction between "full liquid" and "soft"/"semisolid foods" in DC 9905, the

government contends that the Veterans Court correctly held that the VA's interpretation of "liquids" in DC 7203 reflects its "fair and considered judgment."

The government's focus on DC 9905's distinction between "full liquid" and "soft"/"semisolid foods" misses the mark. As mentioned above, Note (3) of DC 9905 defines "mechanically altered foods" as encompassing, *inter alia*, "full liquid" and "soft"/"semisolid foods." Since DC 7203 never utilizes the term "mechanically altered foods," there is no reason to overlay DC 9905's definitions onto DC 7203. And, Note (3)'s statement that it is for "VA compensation purposes" does not indicate that DC 9905's categories of "mechanically altered foods" apply to the entire ratings schedule. Other diagnostic codes having nothing to do with disorders of the mouth/esophagus also contain this statement. *See, e.g.*, 38 C.F.R. § 4.71a, DC 5235–5243, Note (2) ("For VA compensation purposes, normal forward flexion of the cervical spine is . . . ."); *see also id.* at Note (5) ("For VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension . . . ."). We therefore find that the DC 9905's definition of "mechanically altered foods" also does not provide substantial evidence for the Veterans Court's decision to grant the agency deference.[3]

---

[3]    Oddly, the Secretary points us to an online publication—Medline Plus—to support its narrow definition of "liquids." *See* Appellee's Resp. Br. at 19–20. But that same website contains a far more expansive definition of "liquids" that includes the very soft and pureed foods the Secretary claims must be excluded from DC 7203.

Again, we must vacate for reconsideration of the issues presented without reliance on *Auer* deference.[4]

### 3.

The VA's stance that the ordinary meaning of "liquids" in DC 7203 excludes "foods that have a textu[r]al quality" also does not merit deference because it constitutes a position advanced for the first time in litigation. The Veterans Court failed to cite any evidence that the VA has previously applied this definition of "liquids" in the context of DC 7203. *See Roby*, 31 Vet. App. at 99 (citing the VA's appellate briefs and its treatment of "full liquid" (as used in 38 C.F.R. § 4.150, DC 9905) for this proposition). This is not surprising, as the VA could not have taken such a position prior to this litigation. Whereas the Board previously focused on the state of food as it entered the mouth, the Veterans Court refocused the inquiry to the passage of foods through the esophagus. *See id.* at 97. The VA's newfound focus on whether "liquids" encompassed solid food chewed to a liquid consistency, then, could not have been its official position "prior to or, at the latest, during the exercise of its administrative power in the present matter." *Gose v. U.S. Postal Serv.*, 451 F.3d 831, 838 (Fed. Cir. 2006). Under these circumstances, we owe no deference to the VA's interpretation of "liquids."[5]

### C.

Mr. Roby next argues that the Veterans Court legally erred in affirming the Board's finding that his condition did

---

[4]     We also reject the Veterans Court's invocation of *Skidmore* deference.

[5]     As Mr. Roby points out, moreover, the Veterans Court's conclusion that the Secretary's definition of "liquids" comports with the structure and purpose of the regulation is no more than an *ipse dixit* that is readily refuted. *See* Appellant's Reply Br. at 16–18.

not fit the criteria for "[s]evere," but fit the criteria for "[m]oderate." According to Mr. Roby, the Veterans Court's error rests in its failure to explain how, under 38 C.F.R. § 4.7, his condition could more closely approximate the "[m]oderate" 30% rating category (which DC 7203 never defines) rather than the "[s]evere, permitting liquids only" 50% rating category. He points out that if "[m]oderate" essentially denotes a condition that is less than "[s]evere," this is legally insufficient under 38 C.F.R. § 4.7 because it makes it "impossible to determine whether a veteran's condition 'more nearly approximates' one rating criteria or the other." Appellant's Reply Br. at 23.

We agree. Without any regulatory definition of "[m]oderate," it is impossible to determine under 38 C.F.R. § 4.7 whether Mr. Roby's disability status "more nearly approximates the criteria required" for the 50% than the 30% rating of DC 7203. And the government's rebuttal does not persuade us otherwise because it centers § 4.7's analysis around whether Mr. Roby's disability meets the higher rating, rather than whether it more closely approximates it: "a '[s]evere' condition permits the passage of 'liquids only,' a '[m]oderate' condition permits greater passage." Appellee's Resp. Br. at 28. Indeed, as discussed above, it was the very uncertainty conveyed by these terms that prompted the VA to consider amending its regulations. The Veterans Court's discussion on this point also was based on the predicate assumption that the term "liquids" carries the meaning the VA attributed to it. It also seemed to believe that the deterioration in Mr. Roby's condition since he was first deemed to suffer a "mild" impairment was irrelevant; it is not. While we cannot disturb the VA's application of facts to law where the law to which the facts are applied is unquestionably what the VA believes it to be, we are not

prohibited from reviewing the VA's predicate legal conclusions.[6]

We thus also vacate and remand the issue of whether Mr. Roby's achalasia more closely approximates the 50% disability rating for further consideration and elaboration.

D.

Mr. Roby finally argues that, "even if the regulation's use of the term 'liquids' initially appeared ambiguous as to chewed solids," the Veterans Court erred by failing to "interpret[] the [code] in [] Roby's favor" under the pro-veteran canon espoused in *Gardner*. Appellant's Br. at 22–23. He also asserts that whether a condition "more nearly approximates" one ratings level or another should be liberally construed in the veteran's favor. According to Mr. Roby, the pro-veteran canon is a "'traditional tool' of construction" that Supreme Court precedent requires the Veterans Court to apply in analyzing whether DC 7203 is ambiguous and in applying § 4.7 to the facts at issue. *Id.* at 21. Because the Veterans Court failed to apply the pro-veteran canon before concluding that DC 7203 is ambiguous and that Mr. Roby was only entitled to a "moderate" disability rating, Mr. Roby argues that it committed reversible error. *Id.* at 22. Again, we agree.

We disagree with the Veterans Court's failure to consider the pro-veteran canon of construction. In *Kisor II*, the Supreme Court made clear that all canons of statutory construction are to be considered when assessing the meaning of statutes and regulations. 139 S. Ct. at 2414. This necessarily includes *Gardner*'s pro-veteran canon. On

---

[6]    This fact is important because the two inquiries—what constitutes a "liquid[]" when it passes through the esophagus and whether an impairment is closer to a "mild" impairment or "moderate" one—cannot be considered in isolation. The one conclusion clearly impacts the other.

remand, our court in *Kisor v. McDonough* created an effective hierarchy of canons, placing *Gardner*'s pro-veteran canon behind other interpretive canons and holding that *Gardner* was to be applied only when there remains interpretive doubt as to the statutory or regulatory language at issue. 995 F.3d 1316, 1325–26 (Fed. Cir. 2021) ("*Kisor IV*").

Under *Kisor II*'s and *Kisor IV*'s framework, the Veterans Court's holding cannot stand. On finding interpretive doubt in DC 7203's use of the term "liquids" and the impact of that term on Mr. Roby's rating under § 4.7, *Kisor II* and *Kisor IV* require the Veterans Court to consider the pro-veteran canon before resolving the questions before it. The Secretary is wrong when it says consideration of the *Gardner* canon is optional, at the VA's discretion. While the need to resort to the canon may be obviated where no interpretive doubt remains after consideration of more traditional tools of construction, once it is clear interpretive doubt remains, as the Veterans Court concluded, the pro-veteran canon of construction must be considered.

This court has not definitively resolved at what stage the pro-veteran canon applies and whether it precedes any claims of deference to an agency interpretation. *Compare Kisor v. McDonough*, 995 F.3d 1347, 1359–61 (Fed. Cir. 2021) (denying petition for rehearing en banc) (Hughes, Circuit J., concurring), *with id.* at 1363 (O'Malley, Circuit J., dissenting) and *Kisor IV*, 995 F.3d at 1326 (Reyna, Circuit J., dissenting). Because we find that no deference is due to the Board's interpretation of DC 7203 and its application of § 4.7, however, we need not resolve that question today.

It suffices that we vacate and remand for the Veterans Court to take into account the pro-veteran canon of construction. While consideration of the *Gardner* presumption does not necessarily mean Mr. Roby's interpretations prevail, it must be factored into the balance.

### III. CONCLUSION

For the reasons discussed above, we conclude that the Veterans Court's decisions were not in accordance with controlling law. We therefore vacate and remand for further proceedings consistent with this decision.

**VACATED AND REMANDED**

COSTS

Costs to appellant.